## BARREIRO v. McGRATH,
### U. S. Atty. Gen.
### No. 30916.

United States District Court,
N. D. California, S. D.

Dec. 4, 1952.

Joseph A. Brown, San Francisco, Cal., for plaintiff.

Chauncey Tramutolo, U. S. Atty., San Francisco, Cal., Edgar R. Bonsall, Asst. U. S. Atty., San Francisco, Cal., for defendant.

ROCHE, Chief Judge.

Plaintiff filed on September 28, 1952, a complaint for Declaratory Judgment requesting that he be adjudged eligible for suspension of deportation, pursuant to the provisions of Title 8 United States Code Annotated, § 155, and that he be found eligible for United States Citizenship.

The record discloses the following pertinent facts: Plaintiff was born in Portugal on or about June 15, 1911, and is a citizen of that country. He stowed away aboard the Steamship "Anaconda" in the year 1930 and subsequently illegally entered the United States at Jersey City, New Jersey, on or about April 22, 1930.

At the time of entry plaintiff intended to seek work in the United States and to remain permanently. He has remained in this country since his illegal entry. On October 16, 1940, plaintiff registered with the Selective Service in Alameda County, California. Prior to this time the plaintiff made no effort to clarify his status in this country, nor does it appear that he would have ever made any attempt except for the fact that the Selective Service Act, 50 U.S.C.A.Appendix, § 301 et seq., required every person of age to have a draft card in his possession. On May 9, 1941, he classified 1V–C by virtue of the fact that he had his employer request deferment on the grounds of essential worker on war materials. It was later determined that he was not that essential and in September 1942 he was reclassified 1–A. He then learned that he could receive a deferment if he were married. In the same month, but subsequently to the 1–A classification, he advised his draft board he intended to marry one Irene Sieza, which he subsequently did on September 12, 1942. There were two children from this marriage. However, this did not change his status very long for shortly thereafter the law was passed drafting married men.

On June 10, 1943, plaintiff was again reclassified 1V–C by virtue of his filing DSS form 301, which is an application of an alien for relief from military service. Plaintiff obtained the form from the draft board and took it home with him. Shortly thereafter he received an induction notice. He then had the form completed by a notary public, read it and signed it. He then sent it to the draft board and the induction notice was cancelled upon receipt of the form. Plaintiff in his many administrative board hearings has stated that he completed and filed said form because he was in the United States "illegally anyway and couldn't become a citizen". He made no attempt at any time to determine whether he could become a citizen and even after he learned the consequences of filing such form he never inquired of the draft board as to any way to be relieved from his act. However, he was informed that he could execute a form DSS 165. Such a form was an application for voluntary induction and would have had the effect of wiping out the previous form DSS 301. When asked if he would file such form, after some hesitation he stated he "didn't know". For one who wanted to enter the service as badly as the plaintiff now claims he did, this would have been his opportunity and there would now be no question of his motives in filing form DSS 301. Title 50 U.S.C.A. Appendix, § 303(a), states that upon filing such a form as DSS 301 *any person who makes such application shall thereafter be debarred from becoming a citizen of the United States.* (Emphasis the Court's). Under Section 3(a) of the Selective Training and Service Act, the plaintiff became ineligible to citizenship, when he requested relief from military service by filing form DSS 301, and although he indicates his desire to withdraw the request, it cannot be done under the Act except, perhaps, by form DSS 165, stated above. As a person ineligible for citizenship he is inadmissible to the United States under Section 13(c) of the Immigration Act of 1924, 8 U.S.C.A. § 213(c). Since the plaintiff is not eligible to reenter, nothing could be gained by granting the privilege of voluntary departure, and or pre-examination.

Plaintiff seeks to avoid this result by contending that his DSS form 301 application was made out under mistake resulting from his lack of understanding of the form and alleged statements of the draft board at the time he requested the form. He further claims that his deportation would result in serious economic detriment to his wife and children, all of whom are citizens of the United States. He has attempted to show his good faith by his application to the Armed Services for enlistment. There is testimony of the plaintiff that he attempted to enter the service before he had filed such form, but the documentary evidence produced by the plaintiff shows his attempts to enlist subsequent to this litigation. Plaintiff further testified that his first attempts were in 1940 or 1941, he did not remember which, but when asked by the court again, he stated 1941. This being the case, all his attempts were made after he had registered for the draft in 1940. In all cases he was rejected because he was an alien and in the last attempts, which were in 1950, after the Korean conflict started and long after this litigation was in process, he was rejected also on the grounds of overage.

There are two issues before the Court. The first is whether the fact that plaintiff claimed exemption from military service as a Neutral Alien during the late war forever debars him from citizenship or suspension of deportation, even if, as alleged, made through mistake for which the draft board was responsible and that he thereafter withdrew the exemption and tried to enlist in the service.

There is the presumption that the draft board properly discharged its duties, United States v. Chemical Foundation, 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 131. The burden is on plaintiff to rebut this presumption and he has failed to meet this burden. The record is devoid of any evidence to support plaintiff's contention that he filed his claim for exemption through mistake for which his draft board was wholly responsible. Plaintiff's testimony gives some vague statements of what a clerk of the draft board had said to him about filing form 301 and even this testimony does not show that such statements as made were incorrect or misleading. The plaintiff took the form home with him, had a notary friend help him read it and fill it out, and sent it back to the draft board over a week later. There was ample time for him to discover the consequences of such act. Neither during the course of the hearings nor subsequently on appeal to the Commissioner of Immigration did plaintiff claim "mistake" or that he had received "erroneous" advice from his draft board; his only ground was that he had made a "regrettable error in judgment". Thus it seems clear that the signing of the form was merely one more act in a series of efforts by the plaintiff to escape service in the Armed Forces.

The plaintiff cites the case of Machado v. McGrath, D.C.Cir., 193 F.2d 706, for the proposition that if the complaint alleges "mistake" the person has a right to be heard. The alien in the Machado case was here under a valid visa and claimed mistake in signing the form as he was not able to fully understand the nature of the form because of his limited ability to read and write the English language and that he was under the impression he was claiming exemption on grounds of non residence and not neutral alienage. Here the facts are different. Here the plaintiff entered this country illegally, he had lived here continuously for 10 years at the time of his registration, and there is no showing that he could not understand the English language, let alone read and write it. Also, as plaintiff testifies, he retained a notary to help him fill out the form and therefore made the notary his agent and there is no showing that the notary did not understand the English language or that he failed to disclose to plaintiff the full contents of the form. The form contained a specific statement waiving the right of citizenship. The court in the Machado case further stated, on pages 709 and 710, that the Selective Service Act

is clear and that subjects of a neutral country who apply for relief prior to induction need not serve in our armed forces, but any person who asks for this relief is thereafter debarred from becoming a citizen of the United States.

Plaintiff also cites the case of Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729, where the State Department itself was responsible for the erroneous advice there given the petitioner. There the party had clearly stated, at the time, that he did not want to give up his citizenship and was advised that he would not. Whatever information or advice plaintiff here received, there was no showing that it was given by a department of the United States Government.

It is further contended that he is entitled to relief under the humane provisions of the Dies Act. It is the purpose of this act to aid in relief of hardship and economic distress when such was caused by unforeseen events or by unavoidable consequences. The Dies Act was not intended to give relief from intentional acts where the consequences were foreseeable or with a little investigation would have been known.

On the facts presented the petitioner's only error was a lack of foresight, an inability to foresee that his attitude might change when World War II had ended. The plaintiff consistently attempted to evade military service and now seeks to repudiate his conduct merely because he did not have sufficient foresight to see that it might result in his deportation.

■ The second issue is jurisdictional. Since the residence of the Attorney General is in the District of Columbia, should the action have been brought in the United States District Court for that district? Plaintiff cites Section 903 of Title 8 U.S.C.A. to the point that a party claiming the right of citizenship may institute an action in the District of Columbia or in the United States District Court for the district in which such persons claim a permanent residence. Here plaintiff claims his permanent residence to be Alameda County, in the State of California. Such county is within the Northern District, Southern Division, and therefore within the jurisdiction of this court. While the cited section is applicable only to cases where the party claims the right *as a national*, by analogy the party who is admittedly an alien should be enabled to have his rights declared by the court within whose jurisdiction he resides. Section 2201 of Title 28, which provides for declaratory judgment actions, contains nothing to the contrary.

■ In any event, the objection to jurisdiction of the person may be waived by the general appearance of defendant, 28 U.S.C.A. § 1391; Lehi Valley Coal Co. v. Washko, 2 Cir., 231 F. 42, here defendant waived by his general appearance with his only objection being made orally at the time of his trial and at no time previously during the many hearings. Such objection being a privilege, it may be lost; it may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct. The fact that it is the government making the objection is immaterial for, as stated in Industrial Addition Association v. Commissioner of Internal Revenue, 323 U.S. 310, 65 S.Ct. 289, 89 L.Ed. 260, the government may waive objection to venue just as any other litigant may. Here the government, by its general appearance and its laches in making the objection, has waived all rights to plead lack of jurisdiction of the court.

In accordance with the foregoing it is, therefore, Ordered: that there be entered herein, upon finding of fact and conclusion of law, judgment in favor of the defendant and against plaintiff.