**Donald Joseph REAUME, Plaintiff,**
v.
**UNITED STATES of America, James W. Butterfield, District Director of Immigration & Naturalization Service, Detroit District, et al., Defendants.**

**No. 9486.**

United States District Court
E. D. Michigan, S. D.

Aug. 9, 1954.

852

Louis M. Hopping, Fitzgerald, Walker, Conley & Hopping; Detroit, Mich., for plaintiff.

Dwight K. Hamborsky, Asst. U. S. Atty., Detroit, Mich., for defendants.

LEDERLE, Chief Judge.

1. This action was instituted by Donald Joseph Reaume for a judgment declaring him to be a national of the United States, claiming that he has rights and privileges as a national of the United States, which were and are being denied him by the United States Government and the individual defendants, the Detroit District Director of Immigration and Naturalization, the Secretary of State, and the Attorney General. Defendants deny that plaintiff is a United States citizen.

2. Plaintiff was born in Detroit, Michigan, September 13, 1918.

3. At the time of plaintiff's birth, his father, Alec Reaume, and his mother, Lily Reaume, were natives and citizens of Canada. Plaintiff's parents have never acquired any other nationality.

4. Plaintiff lived in Detroit with his parents from birth until July 11, 1925, when his parents took him to reside with them in Ontario, Canada. Plaintiff was then six years of age.

5. Plaintiff thereafter resided continuously in Canada until April 25, 1950. Plaintiff's principal and only place of abode during this period was Canada, except for foreign service outside of Canada and the United States with the Canadian Armed Forces during World War II.

6. On August 1, 1941, plaintiff was inducted into the Canadian Army, having received notice of induction prior thereto.

7. On May 12, 1943, plaintiff transferred by enlistment to the Royal Canadian Navy. Upon such enlistment, he took and signed the following oath of allegiance:

"I, Donald Joseph Reaume, do sincerely promise and swear (or solemnly declare) that I will be faithful and bear true allegiance to His Majesty."

8. In applying for such enlistment, plaintiff also made and signed the Royal Canadian Navy declaration reading:

"I am a British subject and have resided in Canada for the two years immediately preceding date of this application."

9. Plaintiff served in the Royal Canadian Navy from May 26, 1943, until September 11, 1945, when he was discharged.

10. On December 4, 1946, plaintiff appeared at the American Consulate in Windsor, Ontario, where, pursuant to T. 8 U.S.C.A. § 723,[1] he executed an oath reading in part as follows:

"that on July 31, 1941, on which date I was a citizen of the United States, I entered the military service of Canada and on May 26, 1943, I was transferred to the Naval service of Canada, a country at war with a country with which the United States is or was at war; that I terminated such service on Septem-

1. Now Immigration and Nationality Act 1952, § 327(a), 8 U.S.C.A. § 1438(a).

ber 11, 1945; that I lost my citizenship of the United States in connection with such service by taking an oath or making an affirmation or other formal declaration of allegiance to and by entering of service in the armed forces of Canada; that I intend to return to the United States to reside permanently within two months;"

11. At the time of executing the last-mentioned verified statement, plaintiff took the oath of renunciation as to his then sovereign and allegiance as to the United States which is prescribed by T. 8 U.S.C.A. § 735[2] for persons who have petitioned for naturalization as United States citizens.

12. Thereafter plaintiff resided in Canada with his wife and children until April 28, 1950, during all of which time this was plaintiff's only place of general abode.

13. On December 23, 1949, plaintiff was examined by a Board of Special Inquiry at Detroit, Michigan, to determine his admissibility. This Board was convened pursuant to T. 8 U.S.C.A. §§ 152 and 153.[3]

14. Following this hearing, the Board held that plaintiff had lost his United States citizenship under the provisions of T. 8 U.S.C.A. § 804(b),[4] which provides:

"A person who has become a national by naturalization shall lose his nationality by * * * residing continuously for three years in the territory of a foreign state of which he was formerly a national or in which the place of his birth is situated * * *".

15. Plaintiff appealed this decision to the Commissioner of Immigration and Naturalization. On March 7, 1950, the Commissioner entered an order affirming the decision of the Board of Special Inquiry.

16. Plaintiff appealed this order of affirmance to the Board of Immigration Appeals. This Board exercises by delegation the authority conferred upon the Attorney General by T. 8 U.S.C.A. § 153. On April 14, 1950, the Board of Immigration Appeals affirmed the order of the Commissioner.

17. Thereafter plaintiff and his wife appeared at the American Consulate at Windsor, Ontario, where, on the basis of plaintiff and his family being aliens, alien immigration visas were issued for plaintiff, his wife, and their three children.

18. Thereafter, on April 28, 1950, plaintiff and his family were admitted to the United States upon such alien immigration visas for permanent residence. They are presently domiciled in the City of Detroit.

19. When, on May 12, 1943, at the age of 25, while permanently residing in Canada, plaintiff enlisted in the Royal Canadian Navy, declared himself to be a British subject and took an oath of allegiance to the King of Great Britain, all of such actions were voluntary.

20. After plaintiff's naturalization before the American Consul in Windsor, Ontario, on December 4, 1946, plaintiff voluntarily resided continuously for three years in Canada, which was the foreign state of which he was a national prior to such date.

21. No question is raised as to the regularity of the administrative procedures followed in relation to plaintiff, his complaint being that, upon the facts stated, the administrative determination that he is not an American citizen is incorrect.

### Conclusions of Law

1. Where, as here, a permanent resident of this District claims to be a national of the United States, which claim is denied by the Immigration and Naturalization Service and by consular

2. Now 8 U.S.C.A. § 1448.

3. Now 8 U.S.C.A. §§ 1224, 1225(a), 1226, 1357(b), 1362.

4. Now 8 U.S.C.A. § 1484(a).

854

officials, this court has jurisdiction of an action by such claimed national against the heads of such Departments, respectively, the Attorney General and the Secretary of State, seeking a declaration that he is a national of the United States. T. 8 U.S.C.A. § 903.[5]

■ 2. In an action against the Attorney General and the Secretary of State under T. 8 U.S.C.A. § 903, seeking a declaration of United States nationality by a person whose claim to such nationality is denied by subordinates of the two named heads of Departments, neither the United States of America nor the District Director of the Immigration and Naturalization Service is a necessary or proper defendant thereto against their objections.

Savorgnan v. U. S., 1949, 338 U.S. 491, 494, 506, 70 S.Ct. 292, 94 L.Ed. 287.

3. Where, as here, a person was born in the United States and subject to the jurisdiction thereof, he was a national and citizen of the United States at birth. Amendment XIV, § 1, U.S.Const.; T. 8 U.S.C.A. § 601(a).[6]

4. Where, as here, a child was born in 1918, whose father had been born in Canada and had never acquired any other nationality, such child's father is a British subject and Canadian citizen as defined by the Canadian Immigration Act of 1910, found in 1927 Revised Statutes of Canada, Vol. II, Ch. 93, p. 2065, as follows:

"(2) In this Act * * *

"(a) 'alien' means a person who is not a British subject;

"(b) 'Canadian citizen' means (i) a person born in Canada who has not become an alien; * * *"

5. Where, as here, a child was born in the United States in 1918, whose father was and remains a Canadian citizen and national, which child subsequently resided in Canada, such child was both an American citizen, as defined in Conclusion 3 and a Canadian national as de-

fined by The Canadian Nationals Act of 1921, found in 1927 Revised Statutes of Canada, Vol. I, Ch. 21, p. 347, as follows:

"(2) The following persons are Canadian nationals, viz.:

"(a) Any British subject who is a Canadian citizen within the meaning of the Immigration Act;

*  *  *  *  *  *

"(c) Any person born out of Canada, whose father was a Canadian national at the time of that person's birth, or, with regard to persons born before the 3rd day of May, 1921, any person whose father at the time of such birth possessed all the qualifications of a Canadian national as defined in this Act."

■ 6. Where, as here, a Canadian national, who is a dual national by reason of also possessing United States citizenship, while physically within and a permanent resident of Canada in 1943, voluntarily took an oath and made a formal affirmative declaration of allegiance to the King of Great Britain and voluntarily entered into and served in the Royal Canadian Navy, without express authorization by the laws of the United States, such person thereby expatriated himself from the United States and lost his United States nationality. T. 8 U.S.C.A. § 801(b) and (c).[7]

■ 7. Where, as here, a dual national of Canada and the United States expatriated himself and lost his United States citizenship by voluntarily taking an oath and making a formal declaration of allegiance to the King of Great Britain in 1943, at the time of entering into and serving with the Royal Canadian Navy during the Second World War, Canada being a country at war with a country with which the United States was then at war, upon being naturalized in accordance with the provisions of T. 8 U.S.C.A. § 723 before the American Consulate in Windsor, Ontario, on December 4, 1946, he did not become a

5. Now 8 U.S.C.A. § 1503.

6. Now 8 U.S.C.A. § 1401.

7. Now 8 U.S.C.A. § 1481(a).

naturalized citizen, but regained his prior status as a native-born citizen.

Prior to the Nationality Act of 1940, the Act of May 9, 1918, provided as follows:

"That any person who, while a citizen of the United States and during the existing war in Europe, entered the military or naval service of any country at war with a country with which the United States is now at war, who shall be deemed to have lost his citizenship by reason of any oath or obligation taken by him for the purpose of entering such service, may resume his citizenship by taking oath of allegiance to the United States prescribed by the naturalization law and regulations, and such oath may be taken before any court of the United States or of any State authorized by law to naturalize aliens or before any consul of the United States, and certified copies thereof shall be sent by such court or consul to the Department of State and the [Immigration and Naturalization Service] * * *." June 29, 1906, c. 3592, Sec. 4(12); May 9, 1918, c. 69, Sec. 1–3, 40 Stat. 542–548.

This Act was repealed by the Nationality Act of 1940, 54 Stat. 1172–1174, which substituted Title 8 U.S.C.A. § 723 therefor.

T. 8 U.S.C.A. § 723 originated as Sec. 322 of the Proposed Codification of Immigration and Nationality Laws. See Codification of the Nationality Laws of the United States, 76th Congress, First Session, House Committee Print, Part I, page 34. Sec. 322 and the explanation thereof read as follows:

"*Persons Serving in Armed Forces or on Vessels. Section 322.*

"A person who, while a citizen of the United States and during the World War in Europe, entered the military or naval service of any country at war with a country with which the United States was then at war, who has lost citizenship of the United States by reason of any oath or obligation taken for the purpose of entering such service, may be naturalized by taking before any naturalization court specified in Sub-section (a) of Sec. 301 the oaths prescribed by Section 334.

"Proposed section 322 continues a part of the Act of 1918, having for its purpose the prompt repatriation of former United States citizens who, previous to the entrance of the United States into the World War, lost citizenship through entering the armed forces of the Allied countries. That adequate evidence of former United States citizenship and identity may be shown, appearance before a naturalization court in the United States is required. The present law permits the oath before a United States consul also. (subd. 12, sec. 4, act of June 29, 1906, as amended by sec. 1, act of May 9, 1918, 40 Stat. 545–546; U.S.C., title 8, sec. 18)"

In the summary of proposed changes at pages 63–64 of Part I, there is no suggestion that Sec. 322 made any change in pre-existing law.

As enacted into law by Congress, proposed Sec. 322 became Sec. 723 of T. 8 U.S.C.A.

By the Act of April 2, 1942, 56 Stat. 198, T. 8 U.S.C.A. § 723 was amended to read as follows:

" 'Sec. 323. A person who, while a citizen of the United States and during the first or second World War, entered the military or naval service of any country at war with a country with which the United States was or is at war, who has lost citizenship of the United States by reason of any oath or obligation taken for the purpose of entering such service, or by reason of entering or serving in such armed forces, and who intends to reside permanently in the United States, may be naturalized by taking before any naturalization court specified in subsection (a) of section 301, the oaths prescribed by section 335. Any such

person who has lost citizenship of .the United States during the second World War may, if he so desires, be naturalized by taking, before any diplomatic or consular officer of the United States abroad, the oaths prescribed by section 335. For the purposes of this section, the second World War shall be deemed to have commenced on September 1, 1939, and shall continue until such time as the United States shall cease to be in a state of war. Certified copies of such oath shall be sent by such diplomatic or consular officer or such court to the Department of State and to the Department of Justice.' "

The Senate Committee which recommended the 1942 amendment stated that:

"The purpose of the bill is to amend the Nationality Act of 1940 so as to permit former citizens of the United States who have lost their citizenship through service with the Allied forces of the United States during either the first or second World War to re-acquire their original status * * *". (S.Rep. 1166, 77th Cong., 2nd Sess.)

T. 8 U.S.C.A. § 723 was again amended by the Act of August 7, 1946, 60 Stat. 865, to add a second paragraph which read as follows:

" 'A person who, while a citizen of the United States and prior to the effective date of this amendment, has lost citizenship of the United States by voting in a political election in a foreign state other than a state at war with the United States during the Second World War may, if he so desires, be naturalized by taking, prior to one year from the enactment of this amendment, before any naturalization court specified in subsection (a) of section 301, or before any diplomatic or consular officer of the United States abroad, the oaths prescribed by section 335. Certified copies of such oath shall be sent by such diplomatic or consular officer or such court to the Department of State and to the Department of Justice. Such persons shall have, from and after naturalization under this section, the same citizenship status as that which existed immediately prior to its loss.' "

Although Congress expressed no intention to affect the first paragraph of T. 8 U.S.C.A. § 723, it nevertheless used the word "section" in the last sentence of the 1946 amendment. Therefore, it must be concluded that Congress realized that the original Sec. 723 had always repatriated persons to their pre-existing status. Otherwise, Congress would have used the word "paragraph". From the foregoing history of Sec. 323 of the Nationality Act of 1940, T. 8 U.S.C.A. § 723, it is clear that persons repatriated under this section regain their pre-existing status.[8]

8. Further consistency of Congressional intent is expressed in Sec. 327 of the Immigration and Nationality Act of 1952, T. 8 U.S.C.A. § 1438, which reads as follows:
"(a) Any person who, (1) during World War II and while a citizen of the United States, served in the military, air, or naval forces of any country at war with a country with which the United States was at war after December 7, 1941, and before September 2, 1945, and (2) has lost United States citizenship by reason of entering or serving in such forces, or taking an oath or obligation for the purpose of entering such forces, may, upon compliance with all the provisions of subchapter III of this chapter, except section 1427(a) of this title and except as

otherwise provided in subsection (b) of this section, be naturalized * * *.

* * * * *

"(c) Any person naturalized in accordance with the provisions of this section, or any person who was naturalized in accordance with the provisions of section 323 of the Nationality Act of 1940, shall have, from and after such naturalization, the status of a native-born, or naturalized, citizen of the United States, whichever status existed in the case of such person prior to the loss of citizenship: Provided, That nothing contained herein, or in any other provision of law, shall be construed as conferring United States citizenship retroactively upon any such person during any period in which such person was not a citizen."

8. Since the plaintiff was originally a native-born citizen and regained that status by repatriation under T. 8 U.S.C.A. § 723, it follows that he could not lose his citizenship by residing continuously for three years in the territory of a foreign state of which he was formerly a national. T. 8 U.S.C.A. § 804(b).

9. It therefore follows that at the time plaintiff entered the United States in 1950, plaintiff was, and still is, a native-born citizen of the United States. Judgment must be entered against the Attorney General and the Secretary of State declaring that plaintiff is a citizen of the United States.

### Judgment

In accordance with the foregoing findings of fact and conclusions of law,

It Is Hereby Ordered and Adjudged that plaintiff is a citizen of the United States.

It Is Further Ordered that the complaint be dismissed as to the United States of America and the District Director of Immigration and Naturalization, because they are neither necessary nor proper defendants.