MATTER OF S——

Application for Certificate of Citizenship

A–11171850

*Decided by Regional Commissioner March 10, 1960*
*Approved by Assistant Commissioner March 24, 1960*

**Expatriation—Act of March 2, 1907—Wartime oath of allegiance effective upon termination of hostilities when confirmed by subsequent acts.**

Dual United States and British national at birth who took oath of allegiance to British Crown in 1917 upon enlistment in Canadian Army at age 22, which oath was effectively confirmed after the wartime period by repeated acts consistent only with relinquishment of United States nationality, is held pursuant to section 2 of the Act of March 2, 1907 to have lost United States nationality as of the date of termination of hostilities, July 2, 1921. Hence, his child born abroad in 1924 did not acquire United States citizenship at birth under R.S. 1993.

## BEFORE THE REGIONAL COMMISSIONER

**Discussion:** This case is on appeal from the decision of the District Director, St. Paul, Minnesota, of October 6, 1959, denying the application of D——M——S—— for a certificate of citizenship.

Applicant claims that she acquired United States citizenship under section 1993, R.S., at birth in Canada on June 28, 1924, through her father, F——W——K——, who was then a citizen of the United States through birth therein. The issue involved is the citizenship of the father at the time of applicant's birth.

The father was born in the United States on February 9, 1895, of British national parents. In 1910 he moved to Canada with his parents and remained in that country except for temporary visits to the United States to attend school from October to May in 1916 and 1917. He applied in Canada for a homestead on March 10, 1913, and was issued letters patent thereon on August 4, 1916, after reaching his majority. In his sworn statement dated April 18, 1916, in support of this application for the letters patent, the father gave his age as twenty-one years and stated that he was a British subject by birth. He did not take an oath of allegiance either in connection with the application for or the issuance of letters patent. On September 7, 1917, at Winnipeg, Canada, he enlisted in the Canadian Army and took the then required oath of allegiance to the

604

British Crown, serving until his discharge on July 30, 1919. The oath taken by him in 1917 provided as follows:

I, _____, do make Oath, that I will be faithful and bear true Allegiance to His Majesty King George the Fifth, His Heirs and Successors, and that I will as in duty bound honestly and faithfully defend His Majesty, His Heirs and Successors, in Person, Crown and Dignity, against all enemies, and will observe and obey all orders of His Majesty, His Heirs and Successors, and of all the Generals and Officers set over me. So help me God.

The father had become a United States citizen by birth in this country (Fourteenth Amendment to the United States Constitution). Being the son of British national parents, he also acquired British nationality at birth (the Act of 7 Anne, c. 5). See also, Hackworth, Digest of International Law, vol. III, page 360 (1942).

Section 2, Act of March 2, 1907 (34 Stat. 1228), provided in pertinent part:

That any American citizen shall be deemed to have expatriated himself when he has been naturalized in any foreign state in conformity with its laws, or when he has taken an oath of allegiance to any foreign state.

\* \* \* *And provided also,* That no American citizen shall be allowed to expatriate himself when this country is at war.

The applicant's father, after reaching his twenty-first birthday, took an unqualified oath of allegiance to the Brtish Crown on three separate occasions. The first on September 7, 1917, was the only one taken prior to applicant's birth and at a period during which this country was at war. He took that oath, which was an unqualified one, to enlist in the Canadian Expeditionary Force.

The fact that the father was a dual national does not diminish the expatriating effect of an oath since the performance of the expatriating act results in loss of United States nationality. It has been held that the taking of an oath of allegiance to the British Crown by a dual national of the United States and Canada in connection with enlistment in the Canadian Army effects expatriation under the provisions of the Act of March 2, 1907 (*Matter of S——,* 5 I. & N. Dec. 678 (1954); as to the expatriative effect of an oath, see also, Hackworth, Digest of International Law, vol. III, §244 (1942)). The court in *Reaume* v. *United States,* 124 F. Supp. 851 (1954), held that a dual national of this country and Canada would lose United States citizenship by taking such an oath when entering Canadian military service. This same means of expatriation was clearly recognized by the case of *Mandoli* v. *Acheson,* 344 U.S. 133 (1952), as pointed out by the dissenting opinion, although in that case the majority had accepted the Government's position that the oath taken was involuntary. *Kawakita* v. *United States,* 343 U.S. 717 (1952), also acknowledged that an oath of allegiance taken by a dual national would expatriate.

To the extent that *Jalbuena* v. *Dulles,* 254 F.2d 379 (1958), may

give some indication of a contrary view, the Service is not in accord with it. The taking of an unqualified oath of allegiance to a foreign state in the present case was not a bare assertion of a right or the acceptance of a benefit of nationality. It was an overt and solemn acceptance, binding in conscience, of an obligation to a state to which prior thereto allegiance was owing as an accident of birth. As such it was an expatriating act under section 2, *supra*, and the only remaining question is the extent to which the proviso to that section affected its consequences.

The oath of allegiance on September 7, 1917, was taken during wartime. Under the proviso to section 2, Act of March 2, 1907, expatriation could not occur during wartime which extended from April 6, 1917, to July 2, 1921. Had the father done nothing thereafter to indicate a continued allegiance to Canada, he would not have lost his United States citizenship as a result of taking the 1917 oath (*Matter of C——*, 2 I. & N. Dec. 263 (1946); 39 Op. Atty. Gen. 474 (1940)). However, an oath taken during minority may have expatriating effect if confirmed during majority by clear and unequivocal acts, denoting a continued allegiance to the foreign state and an intention to relinquish United States citizenship (*Di Girolamo* v. *Acheson*, 101 F. Supp. 380 (1951)). An oath taken during the period of World War I may be similarly confirmed with like effect upon the termination of the conflict (39 Op. Atty. Gen. 474, 481 (1940)).

If acts are performed confirming an expatriating oath, it is necessary to determine the effective date of the nationality loss. In a case involving the involuntary acquisition of a foreign nationality, it has been held that the act manifesting acceptance of the foreign nationality, involuntarily acquired, related back to the date of acquisition of foreign nationality (*Matter of V——*, 3 I. & N. Dec. 671 (1949); *Matter of M——*, 6 I. & N. Dec. 70 (1953)). In a case involving election of United States nationality, it was also held that the act of election related back (*Matter of G——*, 1 I. & N. Dec. 329 (1942)).

In the instant case, therefore, if acts are shown confirmatory of the wartime oath of allegiance, expatriation would have been effective as of July 2, 1921, the date of termination of the war period. The evidence presented in this case establishes that on July 8, 1924, the father applied for a soldier grant of land which was issued to him on July 24, 1928. In a sworn statement on June 11, 1928, in support of his application for patent for the land, he stated that he was a British subject by birth. Thereafter he became a member of the school board at Coronach, Canada, and on January 12, 1935, took a second oath of allegiance to the British Crown. He became employed as a Canadian Customs Excise Enforcement Officer on April

27, 1938, and once more took an oath of allegiance to the British Crown. He also voted in provincial, dominion, and other Canadian elections beginning in 1927, and taught school for a short time but took no oath in connection therewith.

The facts in this case, in view of the applicable law, show that the applicant's father, acquiring United States and British nationality at birth, took an oath of allegiance to the British Crown during wartime, that such an oath was effectively confirmed after the wartime period by repeated acts consistent only with a relinquishment of his United States nationality, and that such confirmatory acts related back to July 2, 1921, prior to applicant's birth. Consequently applicant did not acquire United States citizenship. The denial of her application by the district director was proper.

**Order:** It is ordered that the denial of the application of D——M——S—— for a certificate of citizenship by the District Director, St. Paul, Minnesota, on October 6, 1959, be affirmed.