Maria Guadalupe **VILLARREAL**, and
Ana Maria Villarreal, Plaintiffs,

v.

Petra **HORN**, et al., Defendants.

**CIVIL NO. 1:15-CV-111**

United States District Court,
S.D. Texas, Brownsville Division.

Signed September 13, 2016

Jaime M. Diez, Jones Crane, Brownsville, TX, Elisabeth Lisa S. Brodyaga, Attorney at Law, San Benito, TX, for Plaintiffs.

T. Monique Peoples, U.S. Department of Justice, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

Hilda G. Tagle, Senior United States District Judge

On July 29, 2016, this Court dismissed, Dkt. No. 92 at 16, all of the claims asserted in Plaintiffs' amended complaint except one: Plaintiff Maria Guadalupe Villarreal's ("M. Villarreal") claim for a declaratory judgment in accordance with 8 U.S.C. § 1503(a) and *Rusk v. Cort*, 369 U.S. 367, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962) that she is a U.S. citizen, Pls.' 1st Am. Pet. Writ Habeas Corpus & Compl. Decl. & Injunctive Relief ¶ 38, Dkt. No. 59 (hereinafter "Am. Compl."). The final sentence of § 1503(a) states, in part, that "[a]n action under this subsection . . . shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is conferred upon those courts." 8 U.S.C. § 1503(a) (2012). The Court has before it Defendants' motion to dismiss, Dkt. No. 66, and the parties' supplemental memoranda of law on whether § 1503(a)'s "resides or claims a residence" language is jurisdictional, Dkt. Nos. 93, 95. Concluding that it is, the Court dismisses M. Villarreal's claims for lack of subject-matter jurisdiction.

### I. Background

M. Villarreal avers that she was born in Mexico in August 1962. Am. Compl. ¶ 11. She maintains that she acquired U.S. citizenship at birth by virtue of the physical presence in the United States of her father, Victoriano Villarreal ("V. Villarreal"), a U.S. citizen, before her birth. *See* Am. Compl. ¶¶ 6, 11, 13.

"Defendants dispute whether V. Villarreal was physically present in the United States for the required periods of time." Dkt. No. 92 at 2 (citing *Falek v. Ashcroft*, 127 Fed.Appx. 684, 684 (5th Cir. 2005) (per

**702**

curiam, unpublished)); *see* 8 U.S.C. § 1401(a)(7) (1952).

M. Villarreal commenced this action after the United States Department of State ("State Department") denied her passport application. She alleged in her original complaint that "[a]t the moment this action is being filed, [she] is at the Port of Entry in Brownsville, Texas, but cannot return to the United States." *Id.* at 1; accord Am. Compl. ¶ 1.

## II. Section 1503(a)'s "Resides or Claims a Residence" Requirement Is Jurisdictional

 The Supreme Court has drawn a distinction between jurisdictional requirements and claim-processing rules expressed in a statute. *See, e.g., Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 161, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010) ("In light of the important distinctions between jurisdictional prescriptions and claim-processing rules we have encouraged federal courts and litigants to 'facilitat[e]' clarity by using the term 'jurisdictional' only when it is apposite." (quoting *Kontrick v. Ryan,* 540 U.S. 443, 455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004)) (internal citation omitted)); *see also* Dkt. No. 92 at 15. Generally, "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Reed Elsevier, Inc.,* 559 U.S. at 161–62, 130 S.Ct. 1237 (quoting *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 515–16, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006)). Under this framework, the Court "look[s] to see if there is any 'clear' indication that Congress wanted the rule to be 'jurisdictional.'" *Henderson ex rel. Henderson v. Shinseki,* 562 U.S. 428, 436, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011) (quoting *Arbaugh,* 546 U.S. at 515-516, 126 S.Ct. 1235); *accord Gonzalez v. Thaler,* 565 U.S. 134, 132 S.Ct. 641, 648, 181 L.Ed.2d 619 (2012). "Congress ... need not use magic words in order to speak clearly on this point." *Henderson,* 562 U.S. at 436, 131 S.Ct. 1197. Instead, "[c]ontext ... is relevant." *Id.* (quoting *Reed Elsevier,* supra, at 168, 130 S.Ct. 1237) (alteration in original). Relevant contextual considerations include the statute's text and structure, *see, e.g., Gonzalez,* 132 S.Ct. at 649–50; judicial "interpretation of similar provisions in many years past," *Henderson,* 562 U.S. at 436, 131 S.Ct. 1197 (quoting *Reed Elsevier,* 559 U.S. at 168, 130 S.Ct. 1237); and harmony with the statute's purpose, *see Gonzalez,* 132 S.Ct. at 650 ("Treating § 2253(c)(3) as jurisdictional also would thwart Congress' intent in AEDPA ...."). Read in light of these considerations, § 1503(a) gives a clear indication that Congress intended the "resides or claims a residence" requirement to be a jurisdictional limitation.

 The Court begins with the text of § 1503(a), which reads in its entirety:

If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States, except that no such action maybe instituted in any case if the issue of such person's status as a national of the United States(*l* ) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in

issue in any such removal proceeding. An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is conferred upon those courts. ·

8 U.S.C. § 1503(a) (2012). In support of the proposition that § 1503(a)'s residence-related limitations are venue provisions only, M. Villarreal proffers extended quotations from Justice Stewart's majority opinion in *Rusk v. Cort*, 369 U.S. 367, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962) and Justice Brennan's concurrence. Her argument proceeds in two steps. *See* Dkt. No. 93 at 2-5. First, she points to *Cort's* characterization of Congress's enactment of a predecessor statute to what is now codified a § 1503(a), Section 503 of the Nationality Act of 1940 (the "1940 Act"), 54 Stat. 1137, 1171–72, as having "broadened the venue of [a declaratory] action by permitting suit to be brought in the 'district in which such person claims a permanent residence.' " *Cort*, 369 U.S. at 376, 82 S.Ct. 787. She reads that statement as a holding that § 503's residence requirement was a venue provision. She then asserts that "nothing in the purpose of § 1503(a), its legislative history, or subsequent case law demonstrates that the residence clause no longer

served as a venue provision, but had been strengthened to a jurisdictional requirement." Dkt. No. 93 at 5.

To the contrary, Congress added language conferring jurisdiction substantially identical to that appearing in the current version of § 1503(a) in 1952.[1] Under well-settled principles of statutory construction, by adding jurisdiction-conferring language, Congress presumptively intended to change the meaning of what is now § 1503(a). *See, e.g., Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, —— U.S. ——, 136 S.Ct. 1562, 1578, 194 L.Ed.2d 671 (2016) (citing *Crawford v. Burke*, 195 U.S. 176, 190, 25 S.Ct. 9, 49 L.Ed. 147 (1904)) (explaining that "a change in phraseology creates a presumption of a change in intent" and that "Congress would not have used such different language [in two statutes] without thereby intending a change of meaning"). There is authority for the proposition that the residence requirement in the 1940 Act was a venue provision, *see Fujiko Furusho v. Acheson*, 94 F.Supp. 1021, 1023 (D. Haw. 1951) (citing *Acheson v. Yee King Gee*, 184 F.2d 382 (9th Cir. 1950)) (holding requirement that action be brought where plaintiff "claims a permanent residence," . . . is one of venue rather than jurisdiction"); *but see Barreiro v. McGrath*, 108 F.Supp. 685, 688 (N.D. Cal. 1952) (framing issue of where § 1503(a) suit should have been brought as "jurisdictional," applying rules

---

1. The Immigration Act of 1940 § 503, 54 Stat. 1171-72, reproduced in *Cort*, 369 U.S. at 391 n.7, 82 S.Ct. 787, provided that

 If any person who claims a right or privilege as a national of the United States is denied such right or privilege by any Department or agency, or executive official thereof, upon the ground that he is not a national of the United States, such person, regardless of whether he is within the United States or abroad, may institute an action against the head of such Department or agency in the District Court of the United States for the District of Columbia or in the

 district court of the United States for the district in which such person claims a permanent residence for a judgment declaring him to be a national of the United States."), By way of contrast, the Immigration and Nationality Act of 1952 Section 360(a), 66 Stat. 163, 273 provided that declaratory action "shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is hereby conferred upon those courts"; 8 U.S.C. § 1503(a) (2012).

of personal jurisdiction rather than subject-matter jurisdiction, and finding that the defendant waived objection to the forum where the action was filed by failing to raise the objection timely). M. Villarreal does not explain what effect Congress intended the newly added jurisdiction-conferring language to have if that language does not promote the residence requirement to a precondition for jurisdiction. *See* Dkt. No. 93 at 2-5. That is, M. Villarreal suggests no construction of § 1503(a) that preserves its jurisdiction-conferring language from being relegated to the status of surplussage. *See Loughrin v. United States,* —— U.S. ——, 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014) (applying "the 'cardinal principle' of interpretation that courts 'must give effect, if possible, to every clause and word of a statute.' ")(quoting *Williams v. Taylor,* 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)); *In re Ritz,* 787 F.3d 312, 320 (5th Cir. 2015) ("explaining that, with certain limitations, as a general rule we aim to 'give effect, if possible, to every word Congress used' in construing statutes") (quoting *Pilgrim's Pride Corp. v. Comm'r of Internal Revenue,* 779 F.3d 311, 316 (5th Cir. 2015)).

The parties cite several out-of-circuit cases applying § 1503(a). Some of those cases treat the § 1503(a)'s "resides or claims a residence" requirement as jurisdictional while others treat it as a venue provision, but none addresses the nature of the conditions it places on bringing an action in detail. *Compare Almonte v. Holder,* 380 Fed.Appx. 351, 351–52 (4th Cir. 2010) (per curiam, unpublished) (construing prisoner's motion to verify legal status as U.S. national as motion under § 1503(a), and holding that prisoner filed his "motion in the wrong court as jurisdiction is vested in the court in the district in which he resides"); *Reaume v. United States,* 124 F.Supp. 851, 853–54 (E.D. Mich. 1954) (concluding, albeit in the absence of any apparent venue dispute, that, where "a permanent resident of this District claims to be a national" and that claim is denied by the government, "this court has jurisdiction of an action" under § 1503(a)), *with Johnson v. Immigr. & Customs Enforcement,* 960 F.Supp.2d 347, 348–50 (D.P.R 2013) (granting motion to transfer venue of § 1503 claim to district to which prisoner plaintiff had been transferred and declining to reach jurisdictional arguments); *Roman-Salgado v. Holder,* 730 F.Supp.2d 126, 129–31 (D.D.C. 2010) (granting motion under Rule 12(b)(3) to transfer venue to district of inmate's residence). Hence, the Court looks to decisions interpreting similar statutory provisions for further guidance in determining Congress's intent in § 1503(a).

At the outset, this Court cannot, and does not, treat Congress's use of mandatory language ("shall be filed") as totemic of a jurisdictional condition, for the Supreme Court has long "rejected the notion that 'all mandatory prescriptions, however emphatic, are … properly typed jurisdictional.' " *Gonzalez,* 132 S.Ct. at 649 (ellipsis in original) (quoting *Henderson,* 131 S.Ct. at 1205) (other citation omitted). Indeed, "[m]ere proximity will not turn a rule that speaks in nonjurisdictional terms into a jurisdictional hurdle." *Id.* at 651. Had § 1503(a) specified only where an action "shall be filed" without more, it would parallel a provision of the Immigration and Nationality Act the Fifth Circuit has held to be a nonjurisdictional venue requirement. In *Jama v. Gonzales,* 431 F.3d 230, 233 (5th Cir. 2005), the Fifth Circuit held that the following provision of 8 U.S.C. § 1252(b)(2) was a nonjurisdictional venue provision: "The petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." Congress employed explicitly jurisdictional language elsewhere in the section of the United States Code construed in *Jama.*

*See, e.g.,* 8 U.S.C. § 1252(a)(2) "Notwithstanding any other provision of law (*statutory* or nonstatutory), ... *no court shall have jurisdiction to review....*"(emphasis added). The provision at issue in *Jama,* by contrast, makes no explicit reference to jurisdiction. *See* § 1252(b)(2) (stating in third sentence only that "[t]he court of appeals shall review the proceeding on a typewritten record and on typewritten briefs"); *see also* § 1252(b)(4)(A) 8 U.S.C. § 1252(b)(2); *see id.* § 1252(b)(4)(A) (specifying what "[t]he court of appeals shall decide") without explicit jurisdictional language). Congress apparently knew how to create a jurisdictional limitation when it wanted to in § 1252, and the absence of jurisdiction-limiting language from § 1252(b)(2) therefore suggests that it is a venue provision, as *Jama* holds. *See, e.g., Point Landing, Inc. v. Omni Capital Intern., Ltd.,* 795 F.2d 415, 423 (5th Cir. 1986) (per curiam) (quoting *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 394, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982)) ("[T]he clear language of §§ 13a-1, 13a-2 and 18(d) demonstrates that Congress knows how to provide for nationwide service of process. The more likely inference to draw from the congressional silence is that Congress omitted that language from § 25 because it did not intend to permit nationwide service of process.").

Unlike § 1252(b)(4), Congress employed jurisdictional language when specifying the exclusive venue for a § 1503(a) action. *See* 8 U.S.C. § 1503(a). The Fifth Circuit has read analogous language as jurisdictional. For example, a provision of the Internal Revenue Code concerning taxpayer challenges to third-party subpoenas provides that "[t]he United States district court for the district within which the person to be summoned resides or is found shall have jurisdiction to hear and determine any proceeding brought under" specified provisions of the same section. 26 U.S.C.

§ 7609(h)(1) (2012). The Fifth Circuit has held that the venue requirement of that provision is jurisdictional. *Masat v. United States,* 745 F.2d 985, 987 (5th Cir. 1984) (finding jurisdictional limitation to be consistent with purpose of § 7609 and reasoning that "[a]llowing jurisdiction to be determined by the location of the taxpayer, as *Masat* argues, would force the mountain to come to Mohammed, and would undercut both objectives of Section 7609"); *see, e.g., Deal v. United States,* 759 F.2d 442, 444 (5th Cir. 1985) (applying *Masat* to reject argument that "Section 7609(h)(1) is not per se a jurisdictional statute, but one giving preferential venue to a federal district where the third party record keeper resides or is found",); *Williams v. United States,* 453 Fed.Appx. 532, 533 (5th Cir. 2011) (per curiam, unpublished) (applying this rule). To cite another example, the Fifth Circuit held in *Arevalo-Franco v. U.S. I.N.S.,* 889 F.2d 589, 590–91 (5th Cir. 1989) that a provision of the Freedom of Information Act, 5 U.S.C. § 552(a)(4), is jurisdictional: "On complaint, the district court of the United States in the district in which the complainant resides or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records ....." Like these provisions and unlike the provision at issue in *Jama,* § 1503(a)'s language marries a jurisdictional conferral to a specified venue.

Turning to the subsection at issue here, the Fifth Circuit construed § 1503(a)'s first sentence in *Rios–Valenzuela v. Department of Homeland Security,* 506 F.3d 393 (5th Cir. 2007). There, the Fifth Circuit considered § 1503(a)(2)'s requirement that "a § 1503(a) claim may not be instituted when the claimant's citizenship is in issue in a removal proceeding." 506 F.3d at 397. The *Rios–Valenzuela* court "read 'institute' in this context to mean '[t]o initi-

ate; begin.'" *Id.* (footnote omitted). Based on that construction, it held that a § 1503(a) plaintiff can, consistent with § 1503(a)(2), "maintain or continue an already filed declaratory judgment action when the Government subsequently begins removal proceedings and citizenship there comes into issue." *Id.* Nevertheless, the Fifth Circuit affirmed the dismissal for lack of subject-matter jurisdiction of the plaintiff's claims under § 1503(a)(1), which is also preceded by the "claim may not be instituted" language of § 1503(a)'s first sentence. *See id.* at 397–99. Thus, § 1503(a)'s first sentence limits jurisdiction by preceding a list of conditions in which jurisdiction does not exist with language that declares that "a claim may not be instituted," i.e., begun or commenced. *See id.*

Though the point is not dispositive, the mandatory language of the second sentence of § 1503(a) parallels the structure treated as creating a jurisdictional limitation in *Rios–Valenzuela.* Congress employed mandatory language to describe the relationship between the district where a § 1503(a) plaintiff "resides or claims a residence" and the federal district court in which the action is "filed." *See* 8 U.S.C. § 1503(a) (2012) ("[a]n action under [§ 1503(a)] . . . shall be filed in the district court of the United States for the district in which such person resides or claims a residence." (emphasis added)). "A civil action is commenced by filing a complaint with the court," Fed. R. Civ. P. 3, and filing can be accomplished by delivering a paper to the clerk or a judge who agrees to accept it, *id.* R. 5(e)(2), or by authorized electronic means, *id.* R. 5(e)(3). That is, the second sentence of § 1503(a) follows the linguistic pattern the *Rios–Valenzuela* court treated as limiting jurisdiction by specifying the court in which the action "shall be filed," i.e., begun or commenced. *Compare Rios–Valenzuela,* 506 F.3d at 397, *with* Fed. R. Civ. P. 3.

More importantly, Section 1503(a)'s residence-related limitations are textually closer to the conferral of jurisdiction than the exceptions that were held to be jurisdictional in *Rios–Valenzuela. See Gonzalez,* 132 S.Ct. at 651 (considering condition's proximity to statute's jurisdictional language and observing that other requirements were closer). Indeed, Congress conferred jurisdiction in § 1503(a) on "those courts," referring, as a matter of grammar, to the judicial district in which the plaintiff "resides or claims a residence." *See* § 1503(a); *Cort,* 369 U.S. at 379, 82 S.Ct. 787 (construing language of legislative report to conclude that, "as a matter simply of grammatical construction, it seems obvious that the 'such person' referred to in the Committee Report is a person who has chosen to obtain a certificate of identity").

Finally, construing § 1503(a)'s "resides or claims a residence" language as jurisdictional comports with the purpose of the 1952 amendments to that subsection as expounded in *Cort. Cort* found that the "legislative history of § 360 of the 1952 Act shows that the predominant concern of Congress was to limit the easy-entry provision of § 503" to prevent noncitizens from using it "to gain physical entry into the United States and then disappear into the general populace." 369 U.S. at 377, 378, 82 S.Ct. 787. Elevating § 503's venue provision to a jurisdictional limitation serves that purpose by preventing a nonresident claimant from gaining access to a forum not intended by Congress through the defendant's waiver of a venue objection. *See, Barreiro v. McGrath,* 108 F.Supp. 685, 688 (N.D. Cal. 1952) (concluding defendant waived any objection to venue by failing to raise it timely in declaratory action under the 1940 Act); *see also, e.g., Hunt v. Bankers Trust Co.,* 799 F.2d 1060, 1068 (5th Cir. 1986) ("Venue is a privilege personal to a litigant, and, even when venue is laid in a court where it would otherwise be improp-

er, it may be waived by express agreement or by conduct." (citations omitted)).

After considering § 1503(a)'s text and structure, its legislative history, and its purpose as expounded in *Cort*, the Court concludes that Congress clearly intended to express a jurisdictional limitation by including the "resides or claims a residence" language. Having made that determination, the Court turns to the merits of Defendants' contention that M. Villarreal does not satisfy that requirement.

### III. M. Villarreal Neither Resides Nor Claims a Residence in This District

■ The term "residence" used in § 1503(a) "means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(33) (West 2016). Unlike the legal concept of domicile, "residence is determined without regard to intent." *Deus v. Holder*, 591 F.3d 807, 811 (5th Cir. 2009) (contrasting concept of domicile); *accord Holder v. Martinez Gutierrez*, 566 U.S. 583, 132 S.Ct. 2011, 182 L.Ed.2d 922 (2012) ("find[ing] nothing to suggest that Congress added an intent element, inconsistent with that definition [of "residence"], by requiring that the residence have been maintained 'continuously for 7 years'" in an INA provision).

In *Ortiz v. Kerry*, No. 1:12–CV–26, Slip Op. (SD. Tex. May 29, 2013), this Court analyzed the 11 prepositional phrases used in § 1503(a). *See* slip op. at 11-12. Based on that analysis and especially the use of the definite article, "the Court conclude[d] that 'in which such person resides or claims a residence' is a disjunctive test to determine the single district in which can be found the single district court in which a plaintiff may file an action under 8 U.S.C. § 1503(a)." *Id.* at 12. The plaintiff in *Ortiz* proffered evidence that he grew up in the Brownsville, Texas, area and was presently living in San Antonio, Texas, while completing a fellowship for medical school. *See id.* at 6. He "filed an affidavit in which he claim[ed] to maintain a permanent residence in Los Fresnos, Texas with his parents, that his home in San Antonio, Texas is temporary, and that he intends to return to the Rio Grande Valley upon completion of his medical fellowship." *Id.* at 7. (describing relocation agreement between plaintiff and medical provider facially located in the Rio Grande Valley). The defendant countered with evidence that the plaintiff was registered to vote in Bexar County, Texas. *Id.* at 6. After consider that evidence, This Court concluded that the plaintiff did not "reside or claim[ ] a residence" in or around Brownsville, Texas, for purposes of § 1503(a). *See id.* at 10–12.

Neither party disputes the fact that Ortiz, at least for the time being, lives, works, and . . . . can generally be found in San Antonio, Texas. Under the plain meaning of the word "reside," the first portion of the test indicates that the Western District of Texas is the proper district. The second option of the test yields the same result. Applying the INA's specific definition of "residence," it is clear that Los Fresnos, Texas[, where the plaintiff's parents resided,] is not and cannot be Ortiz's "principal, actual dwelling place, without regard to intent" because he spends the majority of his time and engages in the majority of his daily life activities in San Antonio, Texas. The bulk of Ortiz's argument rests on his present intent to reside [in] Los Fresnos, Texas in the future, which is only further evidenced by Ortiz's Exhibit G. Because the INA's definition of "residence" expressly prohibits the Court from regarding his intent at all, Ortiz's arguments, particularly those resting heavily on the word "claim" and his intent to relocate to the Brownsville,

Texas area, are unpersuasive. Thus the second option, too, indicates that the proper district is the Western District of Texas.

*Id.* at 12 (footnote omitted).

█ Here as in *Ortiz*, no party disagrees that M. Villarreal, "at least for the time being, lives, works, and .... can generally be found in" Matamoros, Tamaulipas, Mexico. *Id.* at 12. At her deposition taken May 6, 2016, M. Villarreal testified that she lived at addresses in Mexico from her birth in August 1962 to February 2011. Dkt. No. 95–1 at 24:15–26:20; *accord* Answers to Interrogs. ¶ 4, Dkt. No. 74 (listing addresses in Matamoros and dates of residence). M. Villarreal lived with her brother in an apartment in Brownsville from February–September 2011, according to her testimony, Dkt. No. 95–1 at 4:24-5:20, but her brother has since purchased a home and moved into it, *id.* at 5:25-6:5 (stating that M. Villarreal is unaware of who currently resides at the apartment). Since September 2011, M. Villarreal has lived at her mother's home in Matamoros. *See id.* At 6:7-13 (testifying that "[t]his is the address where [she] currently live[s]"). In her response to Defendant's motion to dismiss, M. Villarreal analogizes herself to a travelling salesperson whose business has taken her to Mexico but who claims a residence in Brownsville because she intends to return to a home in that city. As in *Ortiz*, M. Villarreal's claim hinges on her intent to travel to Brownsville on some future date, and she therefore runs afoul of the "INA's definition of 'residence' expressly prohibit[ing] the Court from regarding [her] intent at all." *Ortiz*, slip op. at 12 (first set of brackets in original). Consequently, the result reached in *Ortiz* obtains here as well.[2]

2. One ground for dismissal being sufficient, the Court does not reach Defendants alternative argument that M. Villarreal was not

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the outstanding ·portion of Defendants' motion to dismiss M. Villarreal's § 1503(a) claim for lack of subject-matter jurisdiction, Dkt. No. 66. As the Court has dismissed all of Plaintiffs' claims, the Court **DENIES** Plaintiffs' pending motions, Dkt. Nos. 19, 21, 45, **AS MOOT**. Plaintiffs' motion for reconsideration, Dkt. No. 94, which is not yet ripe, remains pending.

It is so ORDERED.

"within the United States" as that phrase is used in § 1503(a) when she commenced this action.