Hawa SAID, Petitioner/Plaintiff,

v.

Robert EDDY, District Director, U.S. Immigration & Naturalization Service, et al., Respondents/Defendants.

No. A99–0482–CV(HRH).

United States District Court, D. Alaska.

Jan. 28, 2000.

Susan Lindquist, U.S. Atty., Anchorage, AK, for Respondents/Defendants.

## ORDER

HOLLAND, District Judge.

The court is ready to dispose of the remaining issue in this case, whether plaintiff can maintain a declaratory action pursuant to subsection 1503(a) of Title 8, of the United States Code.

Petitioner/plaintiff is Hawa Said. Respondents/defendants are Robert Eddy, District Director of the United States Immigration & Naturalization Service, Doris Meissner, Commissioner of the Immigration & Naturalization Service, and Janet Reno, United States Attorney General.

Plaintiff is a young female who is a resident of Alaska. She was born in the Arab Republic of Yemen in 1978. She came to the United States in the custody of her father who, while plaintiff was under the age of 18, became a naturalized United States citizen. Plaintiff was legally present in the United States at the time of her father's naturalization and remained so

until detained by the Immigration & Naturalization Service (INS) on May 26, 1999.

On January 19, 1999, plaintiff was convicted in state court for misconduct involving a controlled substance in the third degree and sentenced to a three-year suspended sentence with the condition to serve thirty days. Based on this conviction, plaintiff was placed in removal proceedings and, upon completion of her state sentence, was ordered detained by the INS pursuant to 8 U.S.C. § 1226(c) which mandates that the Attorney General take all aggravated felons into custody when they complete their sentences.

Plaintiff claims that she is a United States citizen. Plaintiff alleges that her parents were divorced in Yemen while she was a baby and that her father gained sole legal and physical custody of her, thereby making her a derivative citizen of the United States under 8 U.S.C. § 1432(a)(3).[1] The validity of this Yemeni divorce has been strongly contested by defendants and remains an unresolved question. Plaintiff initially raised her citizenship claim in her removal proceedings, and, on June 17, 1999, the INS requested that plaintiff's counsel submit any proof or evidence that would establish plaintiff's citizenship claim. On July 1, 1999, the immigration judge denied plaintiff's request for bond and she remained in the custody of the INS.

On July 14, 1999, plaintiff filed a petition for writ of *habeas corpus* and a complaint for declaratory and injunctive relief[2] in which she also averred that she was a United States citizen. The court held a hearing on petitioner's petition on July 16, 1999, at which time the court denied an oral motion to release plaintiff from INS custody and requested that respondents answer petitioner's petition.[3] In their answer, respondents urged, among other things, that plaintiff be required to exhaust her administrative remedies before seeking relief from this court.[4] On July 23, 1999, this court stayed this case pending completion of plaintiff's removal proceedings,[5] which continued to run concurrently with this court action. Plaintiff filed a motion for partial reconsideration of the stay order in which she raised the issue that she had a due process right to have her citizenship claim determined by an Article III court in the first instance.[6] Pursuant to that motion, on August 9, 1999, the court lifted its stay because it concluded that it had a duty to make an evaluation of plaintiff's claim apart from the administrative proceedings.[7] In the same order, the court granted an evidentiary hearing on plaintiff's citizenship claim.

An evidentiary hearing was scheduled for September 7, 1999. In the meantime, respondents moved for reconsideration of the order granting the evidentiary hearing, specifically arguing for the first time that 8 U.S.C. § 1252(b) precluded this court's review of plaintiff's citizenship claim.[8] In an order dated August 18, 1999, the court granted respondents' motion for reconsideration, urged the parties to agree to an August 27, 1999, hearing in front of an immigration judge, and requested additional briefing from the parties on the issues suggested by and flowing from the apparent conflict between the Supreme Court's holding in *Ng Fung Ho v. White*, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938 (1922), and 8 U.S.C. § 1252.[9] The parties eventually agreed to the August 27, 1999,

---

1. Petition for Writ of *Habeas Corpus* and Complaint for Declaratory and Injunctive Relief at 5–8, Clerk's Docket No. 1.

2. *Id.*

3. Court Minutes (hearing on petition, July 16, 1999), Clerk's Docket No. 5.

4. Clerk's Docket No. 6.

5. Order (stay of proceedings, July 26, 1999), Clerk's Docket No. 8.

6. Clerk's Docket No. 9.

7. Order (re motion for partial reconsideration, Aug. 9, 1999), Clerk's Docket No. 14.

8. Clerk's Docket No. 22.

9. Clerk's Docket No. 29.

administrative hearing date, and the court vacated its September 7, 1999, evidentiary hearing.[10]

At the August 27th administrative hearing, the immigration judge made tentative findings that plaintiff was not a United States citizen but did not reach a final conclusion. The INS thereafter filed a motion to clarify the status of the removal proceedings. In an order dated September 22, 1999, the immigration judge stated that

> "the Court concludes that the Respondent is an alien. Further, based upon her admission that she was convicted as charged ... the Court finds that she is subject to removal under § 237(a)(2)(A)(iii) I & N Act, as an alien convicted of an aggravated felony.... [H]er applications for withholding of deportation under § 241(b)(3) and the Convention Against Torture regulations have been received, and a hearing date has been set for that hearing. At the conclusion of that hearing, a final decision will be entered...." [11]

On September 10, 1999, this court, at plaintiff's request, again stayed its proceedings until September 30, 1999, so that plaintiff could submit additional evidence in her removal proceedings.[12] By October 7, 1999, the parties had filed the additional briefing requested by this court, although both sides continued to file supplemental authority and oppositions to such through mid-November. On November 18, 1999, plaintiff advised the court that she had an administrative hearing scheduled for the following week.

Plaintiff's removal proceedings continued on November 23, 1999, when the immigration court considered her application for withholding from removal. At that time, plaintiff made a very practical, facially prudent, decision to terminate the immi-

gration court proceedings that sought her removal. As already mentioned, in those proceedings, plaintiff had claimed U.S. citizenship, and the INS had claimed that plaintiff was an alien subject to removal. At a point after the immigration court had rendered a tentative finding that Said had not established her claim of U.S. citizenship—but before all of the evidence on those issues had been taken for purposes of a final ruling—the INS and plaintiff entered into a stipulation that the INS would grant withholding of removal under subsection 241(b)(3), 8 U.S.C. § 1231(b)(3), and plaintiff would take no appeal. The immigration court approved the parties' agreement, and the removal proceedings ended with plaintiff being released from detention that day. Neither the stipulation nor the order expressly addressed the matter of alienage or citizenship.

The immigration court was asked to clarify its ruling but declined to do so unless the proceedings were reopened, which no one has requested. Moreover, it is this court's perception that there was nothing to clarify, for there is no way (short of speculation) that the immigration court could speak to what the INS and plaintiff had in mind as regards alienage or citizenship in making their agreement.

With the removal proceedings terminated, respondents, on December 1, 1999, filed a motion to dismiss plaintiff's petition for writ of *habeas corpus* and complaint for declaratory and injunctive relief,[13] arguing that the termination of plaintiff's removal proceedings had rendered her action in this court moot. In an order dated December 10, 1999, the court granted respondents' motion as to plaintiff's petition for writ of *habeas corpus* but denied respondents' motion as to plaintiff's complaint for declaratory judgment.[14] Having

---

**10.** Order (case status, Aug. 31, 1999), Clerk's Docket No. 32.

**11.** Memorandum of Immigration Judge (re Motion to Clarify) at 8, attached as Exhibit A to Government's Motion for Leave to File Opposition, Clerk's Docket No. 37.

**12.** Order (case status, Sept. 10, 1999), Clerk's Docket No. 35.

**13.** Clerk's Docket No. 49.

**14.** Clerk's Docket No. 52.

dismissed the *habeas corpus* petition, the court indicated that it was shifting its focus to plaintiff's declaratory action and the question of whether plaintiff could, at this time, maintain such an action pursuant to 8 U.S.C. § 1503(a).

## *Discussion*

Subsection 1503(a) provides in pertinent part:

> If any person who is within the United States claims a right or privilege as a national of the United States *and* is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28....

8 U.S.C. § 1503(a) (emphasis added).

■ Subsection 1503(a) precludes a declaratory action in the present case in two ways. First and foremost, no department, agency, or official thereof has denied plaintiff's claim that she is a United States citizen. As plaintiff herself admits, "the Immigration Judge never made a finding that Ms. Said was not a U.S. citizen."[15] Without such a finding, there is no final administrative denial of the right or privilege of U.S. citizenship. And without that denial, there is no basis for a declaratory action under subsection 1503(a). *Garcia v. Brownell,* 236 F.2d 356, 357 (9th Cir.1956); *United States v. Breyer,* 41 F.3d 884, 890 (3d Cir.1994) (both construing prior similarly worded version of subsection 1503(a)).[16]

■ Even if there had been a denial of plaintiff's claim of U.S. citizenship, subsection 1503(a) precludes a declaratory action in this case at this time. There are two exceptions to the right for relief under subsection 1503(a):

> no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding.

8 U.S.C. § 1503(a). Since plaintiff's removal proceeding has concluded and she has agreed not to appeal, the second exception is not implicated here, but the first exception is clearly implicated. Plaintiff's status as a citizen of the United States arose in connection with the recently concluded removal proceeding.

Plaintiff argues that this exception has no import here because subsection 1503(a) does not apply to her because she is in the United States and Section 1503 only applies to persons outside the United States. This argument ignores the express language of subsection 1503(a). The initial sentence in subsection 1503(a) states that it applies to "any person who is within the United States[.]" 8 U.S.C. § 1503(a). Subsection (b) expressly applies to persons "not within the United States" whose claims of citizenship have been denied. 8 U.S.C. § 1503(b). Obviously, if subsection 1503(a) also only applies to persons not within the United States, there would be no need for subsection (b). The Ninth Circuit has "long followed the principle

**15.** Plaintiff's Opposition to Defendants' Motion to Dismiss at 3, Clerk's Docket No. 50.

**16.** As discussed in the court's statement of the procedural history of this case, there is a potentially important, unresolved issue as to what effect, if any, the termination of plaintiff's removal proceedings by a grant of withholding removal had upon plaintiff's claim of citizenship. It might be argued that a finding of alienage was necessarily implicit in the withholding of removal, for a United States

citizen could not have been removed under any circumstances. A grant of withholding removal therefore implies a lack of citizenship. On the other hand, the immigration judge never heard all of the evidence as to plaintiff's citizenship, never made the tentative findings final, and has expressed no conclusion whatever as to plaintiff's citizenship. This is neither the time nor the case for deciding the effect of the immigration court's order terminating the removal proceedings.

that [s]tatutes should not be construed to make surplusage of any provision." *Northwest Forest Resource Council v. Glickman,* 82 F.3d 825, 834 (9th Cir.1996) (citations and internal quotation marks omitted). There is no reason to depart from that principle here.

However, plaintiff's argument focuses not on the express wording at the beginning of the statute, but rather on the wording in the exceptions found in subsection (a). Prior to the 1996 amendments, the exceptions in subsection 1503(a) only applied if the issue of nationality arose during an exclusion hearing. Because the Supreme Court had held that persons outside the country were not entitled to the same constitutional safeguards as those already inside the United States, precluding judicial review of issues raised in an exclusion hearing did not raise Fifth Amendment concerns. In 1996, Congress changed the language in subsection 1503(a) from "exclusion" to "removal". Plaintiff's argument is, in essence, that Congress did not intend to do this and did not consider the ramifications this change of language might have. She argues that Congress merely made a global substitution of "removal" for "exclusion". The court is aware of no legislative history that specifically addressed this change, so plaintiff may be correct that the change was made as part of the global change.

Nonetheless, the language of the statute is unambiguous. The exception applies to claims of nationality raised in removal hearings. In several recent cases, the Supreme Court has reaffirmed that in construing a statute, if the statute is clear, one looks no further. In *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999), the Court stated that in any case of statutory construction, its analysis begins with the language of the statute. *Id.* at 438, 119 S.Ct. 755. "[W]here the statutory language provides a clear answer," the analysis also ends with the statute's language. *Id.* In *Robinson v. Shell Oil Co.,* 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997), the Court announced that the first step in interpret-

ing a statute is determining "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Id.* at 340, 117 S.Ct. 843. The inquiry ceases "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.' " *Id.* (citations omitted). The "ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341, 117 S.Ct. 843. There is no ambiguity here. In 1996, Congress intended to replace all references to "exclusion" and "deportation" with "removal"; and it did so in Section 1503 just as it did in other sections of the immigration and naturalization statutes.

The first exception applies to persons within the United States whose nationality claims arose by reason of or in connection with a removal proceeding. Plaintiff's case falls squarely within that description, and the court is not at liberty to change or ignore the plain language of the statute when there is nothing to suggest that it was not Congress's intent to effect the change it did. *See Hanover Bank v. Commissioner,* 369 U.S. 672, 687, 82 S.Ct. 1080, 8 L.Ed.2d 187 (1962).

Plaintiff also appears to make the argument that the exceptions do not apply to her because the removal proceeding has been concluded. The text of the statute does not support such a conclusion. If the exceptions apply only while a removal proceeding is still pending, then the first exception would be superfluous since the second exception covers instances where the removal proceeding is still pending. The past tense "arose" used in the first exception also indicates that this provision applies to concluded removal proceedings.

At this juncture, the facts of this case preclude plaintiff from seeking a declaratory judgment regarding her citizenship claim. We turn then to plaintiff's contention that 8 U.S.C. § 1503(a) is unconstitutional. The court supposes, without decid-

ing, that if the statute in question were unconstitutional, then plaintiff would be entitled to proceed in this court with her declaratory action despite the provisions of subsection 1503(a)(1).

■ Defendants contend that the court cannot consider the constitutionality of subsection 1503(a) because of the so-called "zipper clause" found in 8 U.S.C. § 1252(b)(9). Subsection 1252(b)(9) provides that

> [j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9).

Section 1252 of Title 8 addresses generally the matter of judicial review of orders of removal. By her complaint in this case, plaintiff seeks a declaratory judgment as to her nationality. She does not seek a review of a removal order, for indeed she is subject to no removal order.

Sections 1252 and 1503 of Title 8 are plainly the subject of an integrated plan on the part of Congress to re-engineer the processes by which claims of nationality will be reviewed by the court. The provisions mesh with one another. Whereas Section 1503 contains a preclusion as to declaratory actions for purposes of raising a claim of nationality which arises by reason of or in connection with removal proceedings, Section 1252 (and in particular subsection 1252(b)(5)) makes provision for judicial review of claims of nationality arising in removal proceedings. Read in the context of the whole of Section 1252, this court reads subsection 1252(b)(9) as speaking to the consolidation of questions of nationality and constitutionality for review of removal orders *only*. This court does not construe that subsection as speaking to how issues of nationality or constitutionality arising in other contexts (such as Section 1503) would be managed. What is

before this court purports to be an action based upon the denial of rights and privileges of a U.S. national under Section 1503.

What is before this court now is a question as to the constitutionality of subsection 1503(a), not a constitutionality issue with respect to Section 1252 generally, nor the process for review of orders of removal in particular. Moreover, the court does not have before it any constitutionality issue pertaining to or arising from plaintiff's removal proceedings before the immigration court. As set out above, those proceedings have terminated with an agreement that there would be no review. Again, what *is* before the court is an attempt to bring a declaratory action and a claim that the statute pertaining to such actions is unconstitutional. Subsection 1252(b)(9) does not preclude this court's review of the constitutionality of subsection 1503(a).

■ Turning then to the constitutionality of subsection 1503(a), there appears to be no case, and the parties do not cite any, that has addressed this issue after the 1996 amendments. Two older district court cases which dealt with the previous version of subsection 1503(a), when the exceptions only applied to exclusion proceedings, found subsection 1503(a) constitutional. *Gonzalez–Gomez v. Brownell*, 114 F.Supp. 660 (S.D.Cal.1953), held that subsection 1503(a) did not deprive any citizen of his day in court. Rather it limited the relief available under the statute to specified situations. *Id.* at 661. *Ng Gwong Dung v. Brownell*, 112 F.Supp. 673 (S.D.N.Y.1953), decided the constitutional issue on the basis that in an exclusion case it is constitutional to decide the issue of citizenship administratively because the alleged citizen is not in the United States. While these do not provide any support for the constitutionality of subsection 1503(a) as it exists today, both *Agosto v. INS*, 436 U.S. 748, 98 S.Ct. 2081, 56 L.Ed.2d 677 (1978), and *Ng Fung Ho v. White*, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938 (1922),

support a finding that the current subsection 1503(a), as amended in 1996, is constitutional on its face.

Plaintiff's contention is that the first exception in subsection 1503(a) is unconstitutional because it deprives a person in the United States who alleges that she is a U.S. citizen of her Fifth Amendment right of due process to have an Article III court make the initial determination of her citizenship. This due process right for someone within the United States to have her citizenship claim decided by an Article III court was established in *White*. *White* held that a resident of the United States has a Fifth Amendment right to a judicial determination of his claim of United States citizenship. *White*, 259 U.S. at 284, 42 S.Ct. 492. *White* did not hold, as plaintiff continually argues, that a resident of the United States has a constitutional right to have the *initial* determination of her citizenship claim decided by an Article III court. *White* due process is satisfied as long as a resident is afforded a *de novo* judicial review of an administrative determination of citizenship. In the later *Agosto* case, the Court (discussing its holding in *White*) stated "[w]e therefore held that a resident of this country has a right to *de novo* judicial determination of a claim to United States citizenship which is supported 'by evidence sufficient, if believed, to entitle [him] to a finding of citizenship.'" *Agosto*, 436 U.S. at 753, 98 S.Ct. 2081 (*quoting White*, 259 U.S. at 282, 42 S.Ct. 492).

Subsection 1503(a), complete with its exceptions, complies with that requirement. If a resident's citizenship claim has been denied and there is no removal proceeding involved, the resident can bring a declaratory action in federal district court. It should be noted that subsection 1503(a) proceedings are not subject to the Administrative Procedures Act. 5 U.S.C. §§ 701–06. Rather, under Section 1503, a claimant's action is brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02. The obvious import of this distinction is that APA review is on the record, whereas a declaratory action is a *de novo* matter

before this court. Therefore, subsection 1503(a) is constitutional on its face.

As of now, plaintiff has not been detained and is not subject to removal. She has been deprived of no right or privilege of a United States citizen. Plaintiff may or may not be a United States citizen. She may or may not have a justiciable claim of citizenship as a result of the termination of the removal proceedings with an agreement to grant withholding of removal. Plaintiff claims that, on the present facts and procedural status, she should be permitted to bring a declaratory action for a determination of her citizenship; but such an action is foreclosed to the plaintiff at this time because of the limitations of subsection 1503(a)(1). As detailed above, plaintiff's only present basis for a declaratory action is the terminated removal proceeding, for which reason her present claim of U.S. nationality arises "by reason of, or in connection with [a] removal proceeding[.]" 8 U.S.C. § 1503(a)(1). When and if plaintiff is at some future time denied a right or privilege of a United States national by a department, agency, or official of the United States, she will be entitled to bring an action as authorized by Section 1503; and the interposition of such other federal action will take plaintiff's case out of exception (1) to subsection 1503(a).

Any argument that plaintiff may make that subsection 1503(a) is unconstitutional as applied to her appears to have little merit. She is precluded from invoking this court's jurisdiction pursuant to subsection 1503(a) because her claim of nationality arose during a removal proceeding. Had plaintiff not voluntarily terminated her removal proceeding by a stipulation that there would be no appeal, she would have been entitled to raise her nationality claim on review as provided in subsection 1252(b). As the court presently applies subsection 1503(a)(1) to the plaintiff, she is done no constitutional injustice, for (aside from the terminated removal proceedings) there has been no denial of rights or privi-

leges of U.S. citizenship. Therefore, sub-section 1503(a) is constitutional on its face and as applied to plaintiff.

### Conclusion

Plaintiff's complaint for declaratory and injunctive relief is dismissed. The clerk of court shall enter judgment accordingly.