IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 25, 2007

Charles R. Fulbruge III
Clerk

No. 06-50710

Arturo RIOS-VALENZUELA

Plaintiff-Appellant

v.

DEPARTMENT OF HOMELAND SECURITY et al.

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas

USDC No. 3:05-CV-389

Before HIGGINBOTHAM, DAVIS, and WIENER, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Arturo Rios-Valenzuela appeals from a district court dismissal of his suit seeking a declaratory judgment that he is a citizen of the United States. We affirm.

I

Rios was born in 1956 in Mexico. He claims that his mother was unmarried to his father, and an American citizen at the time, hence she needed only to have been present in the United States for one continuous year for him

to be a citizen.[1]  The Government contends that Rios's parents were married Mexican citizens when he was born.

In 1975, the INS granted an application for a green card for Rios filed by his mother, and he moved to the United States.  In 1989, the Government deported Rios to Mexico because of his conviction for a drug crime.

In October 2003, Rios reentered the United States by claiming to be an American citizen.  On January 20, 2004, the Government issued a Notice to Appear, placing Rios in removal proceedings.  The next day, the Government charged him with criminal illegal reentry.  Rios claims that it was only during this period that he realized his claim to citizenship; consequently, on May 12, while the removal proceeding was pending, Rios filed a Form N-600, Application for Citizenship, with United States Citizenship and Immigration Services (USCIS).  On August 13, the District Director of USCIS in El Paso denied the application.  Rios appealed to the Administrative Appeals Unit (AAU).  On September 17, the Government dropped the criminal charges.

On January 14, 2005, while the appeal from the first denial of the N-600 was pending, Rios filed another N-600 with the same District Director.  The immigration judge presiding over the removal proceedings held a hearing on March 15, 2005.  Rios defended against removal in the proceedings by submitting evidence of his citizenship.  The immigration judge terminated the removal proceedings without prejudice.

On April 1, the AAU rejected Rios's appeal.  On August 16, a Service Officer at the USCIS El Paso District processing the second application interviewed Rios and explained the need for evidence of his mother's presence in the United States, giving him twelve weeks to provide such evidence.

---

[1]  See 8 U.S.C. § 1409(c).

On October 21, Rios filed the instant case in district court, seeking a declaratory judgment that he is a citizen, having exhausted his administration remedies by filing the first N-600 and appealing its denial. Rios claimed he was in "legal limbo" because he was allowed to remain in the country but refused proof of citizenship. Later, on November 16, the District Director denied Rios's second application as abandoned because Rios had produced no evidence to the USCIS.

In district court, the Government moved to dismiss for lack of jurisdiction. The court granted the motion, and Rios appealed.

Subsequent to oral argument, the Government issued a new Notice to Appear, re-instituting removal proceedings against Rios. According to Rios, he has asserted his citizenship as a defense to removal and filed a Motion to Terminate or, in the alterative, a Motion to Administratively Close Removal Proceedings. A final merits hearing has not yet been held.

II

As we are reviewing a dismissal for lack of subject matter jurisdiction, our review is de novo.[2]

A

A person generally may pursue a citizenship claim in two ways. First, if the person is in removal proceedings he can claim citizenship as a defense. If the immigration judge rejects the defense and orders removal, the person can, after properly exhausting administrative channels, petition this court under 8 U.S.C. § 1252(b) for review of the final order of removal, including for review of the citizenship claim. However, if the immigration judge accepts the citizenship defense, she terminates the removal proceedings without deciding citizenship.[3]

---

[2] St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1252 (5th Cir. 1998).

[3] See Ng Fung Ho v. White, 259 U.S. 276, 284 (1922); Chau v. I.N.S., 247 F.3d 1026, 1027-28 (9th Cir. 2001).

Second, a person can affirmatively seek proof of citizenship by filing with USCIS a Form N-600, Application for Citizenship, under 8 U.S.C. § 1452(a). If the application is denied, he can appeal to the AAU under 8 C.F.R. §§ 341.6, 103.3(a). If the AAU affirms,[4] the person can seek a judicial declaration of citizenship under 8 U.S.C. § 1503(a), which provides:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding.

B

When Rios initially appealed, the issue before the court was whether 8 U.S.C. § 1503(a)(1) deprived the district court of jurisdiction. However, the Government has initiated another round of removal proceedings, raising the issue of whether § 1503(a)(2) bars jurisdiction over Rios's claim. The Government argues in a letter brief filed at this court's request that, if Rios raises his citizenship as a defense in the new removal proceedings, "then the provisions of 8 U.S.C. § 1503(a)(2) clearly deprives the district court of jurisdiction over Plaintiff's claims." In his letter brief, Rios indicates that he has raised citizenship as a defense.

Section 1503(a)(2) provides that "no [declaratory judgment] action may be instituted in any case if the issue of such person's status as a national of the United States . . . is in issue in any such removal proceeding." Rios contends

---

[4] A person must exhaust the agency procedures.

4

that the exception does not deprive the courts of jurisdiction because there were no removal proceedings pending when he filed his declaratory judgment action. We agree. The statute states that a § 1503(a) claim may not be instituted when the claimant's citizenship is in issue in a removal proceeding. The exception does not say that a purported citizen may not maintain or continue an already filed declaratory judgment action when the Government subsequently begins removal proceedings and citizenship there comes into issue. Rather, we read "institute" in this context to mean "[t]o initiate; begin."[5] The purported citizen's citizenship cannot, logically, be "in issue in [a] removal proceeding" unless there is a removal proceeding pending. In other words, a purported citizen may not initiate or begin a declaratory judgment action to establish his citizenship if it is already being litigated in a removal proceeding. This reading of the exception does not run afoul of the concern that persons will use § 1503(a) to circumvent the administrative removal process; if there are no removal proceedings pending when a declaratory judgment action is brought, there is nothing for the claimant to circumvent.

C

We turn our attention to § 1503(a)(1). The district court noted that Rios did not file his N-600 application before the commencement of removal, "a situation where this court would have jurisdiction." It noted further, "[a]s a challenge to his removal, during those removal proceedings [Rios] claimed that he was a United States Citizen." Thus, the court concluded,

> it is beyond dispute that questions as to [Rios's] citizenship arose after the initiation of removal proceeding . . . and [Rios] cannot obviate Congressional intent limiting the manner in which claims of nationality may be raised following the initiation of removal proceedings pursuant to § 1252(b)(5) by also pursuing an alternative

---

[5] The American Heritage Dictionary defines institute as a verb to mean "[t]o establish, organize, and set in operation"; "[t]o initiate, begin"; and, "[t]o establish or invest in an office or position."

claim of citizenship, where his claim to citizenship also arose by
reason of or in connection with his removal proceedings.

Consequently, the court dismissed for lack of jurisdiction because "the issue" of Rios's citizenship "arose by reason of, or in connection with" his removal proceeding.

Rios argues that the district court's interpretation of § 1503(a)(1) as barring jurisdiction over any claim based on the denial of citizenship simply because the claim was made after the initiation of removal proceedings expands the statute beyond its plain meaning. The Government agrees that timing of the application alone does not control. What matters, the Government argues, is that the issue of citizenship arose in connection with Rios's removal proceeding.

The text of the statute supports the Government; "[t]he exception applies to claims of nationality raised in removal proceedings."[6] It is the context of how the particular issue of citizenship arose rather than the mere timing of events that determines the applicability of § 1503(a)(1). The exception precludes jurisdiction over Rios's citizenship claim because his claim "arose by reason of, or in connection with" his removal proceeding: the issue of Rios's citizenship that forms the basis of his claim here originates, at the least, in connection with the removal proceedings.

The N-600 application process is, as Rios argues, a proceeding separate from the removal proceedings. But § 1503(a)(1) does not apply depending on whether the proceedings are separate; rather, it applies when the particular citizenship issue "arose" in the removal proceeding. That is, the exception focuses on the proceeding in which the particular claim to citizenship originates, not the proceeding in which it is being pursued.

---

[6] Said v. Eddy, 87 F. Supp. 2d 937, 941 (D. Alaska 2000).

Nor does it matter that the removal proceedings had ended when Rios brought his claim for declaratory judgment. As the district court in Alaska explained,

> The text of the statute does not support such a conclusion. If the exceptions apply only while a removal proceeding is still pending, then the first exception would be superfluous since the second exception covers instances where the removal proceeding is still pending. The past tense 'arose' used in the first exception also indicates that this provision applies to concluded removal proceedings.[7]

We are persuaded by and adopt the court's analysis.[8]

Rios argues that this construction of the exception means that jurisdiction under § 1503(a) is always precluded when citizenship first arises in a removal proceeding, but we do not read the exception as forever hanging an albatross around the neck of those who first raise citizenship as a defense in a removal proceeding.[9] So long as a citizenship claim finds its genesis outside of the context of removal proceedings, the exception is no bar to jurisdiction;[10] thus, for

---

[7] Id. at 941.

[8] But see North v. Rooney, Civil No. 03-1811, 2003 WL 21432590, at *4 (D.N.J. June 18, 2003) ("With no removal proceedings presently ongoing at this time, this action seeking judicial review by declaratory judgment does not likely 'arise out of, or in connection with' a removal proceeding."). We are not persuaded by North on three accounts. First, the district court changed the tense of the verb in the exception from "arose" to "arise." If the exception applied when a citizenship issue "arise[s]" in a removal proceeding, Rios-Valenzuela's argument might have some purchase. Second, the North court immediately qualified its analysis of the exception: "Moreover, the issue of plaintiff's citizenship actually arose well before the commencement of the 1999 removal proceedings as demonstrated by plaintiff's argument that his citizenship status was fully litigated and determined in his favor by an Immigration Judge ruling in 1989 . . . ." Id. (emphasis added). Finally, the Said court's analysis is more consistent with the statute's structure and text.

[9] See Samuel Taylor Coleridge, The Rime of the Ancient Mariner.

[10] See, e.g., Benjamin v. Bureau of Customs, 401 F. Supp. 2d 184, 185-86 (D. Conn. 2005) (explaining that, even though a petition under § 1252(b) was time barred, the petitioner could still file an N-600 application and receive judicial review if the application were denied); Said, 87 F. Supp. 2d at 943 (explaining that, even though petitioner could not at that time

example, once removal proceedings have run their full course and terminated, any future citizenship claim would not arise in those removal proceedings.[11] The Government concedes this, explaining that "[i]f Rios-Valenzuela were to again apply for citizenship at some future time, when no removal proceedings have been initiated, and the claim is denied, then, according to Said, he would have a right to seek declaratory judgment."[12] This narrower reading is consistent with the concern that the federal courts not be used as tools to frustrate and interfere with removal proceedings.

This straightforward reading of the statute appears to leave Rios in limbo, victorious in the removal action against him, yet unable to obtain judicial review of his claim of citizenship through review of the executive's denial of his N-600 application. The inability to obtain judicial review, Rios urges, implicates his due process rights to judicial review of his citizenship claim. He argues, therefore, that this court should look beyond the straightforward reading of the statute to the purpose of § 1503(a), which is to channel litigation over the issue of citizenship into removal proceedings, where relevant, so as to prevent the courts from interfering with those proceedings through declaratory judgment actions attending N-600 applications. Under this approach, the statute would foreclose judicial review of N-600 applications where removal proceedings are pending or were terminated unfavorably to the alien.[13]

---

pursue a declaratory judgment action under § 1503(a), the petitioner could obtain judicial review of when at "some future time" the Government denied her a "right or privilege" attending citizenship).

[11] Of course, if the person claiming to be a citizen loses in the removal proceedings, the appropriate means for judicial review of his citizenship claim is § 1252(b).

[12] Government-Appellee's Brief at 14 (referring to Said, 87 F. Supp. 2d at 943) (emphasis added).

[13] Again, where an alien fails in defending against removal on the basis of citizenship, he may obtain judicial review of his citizenship claim through § 1252.

This argument does not persuade. First, the doctrine of constitutional avoidance is not without limits. The doctrine does not permit courts to impose upon a statute an interpretation that does violence to its plain language: "It is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts. The canon is thus a means of giving effect to congressional intent, not of subverting it."[14] The interpretation of § 1503(a) that Rios urges cannot be found in the text of the statute itself; it is discoverable only in the purported purposes of Congress. But for us to apply the doctrine of constitutional avoidance, we must be able to foot the interpretation in the statute's text. The doctrine of avoiding interpretations of statutes that lead to absurd results is similarly limited.[15]

Second, the due process jurisprudence upon which Rios relies is not squarely on point. Ng Fung Ho v. White and its progeny consider whether a person claiming to be a citizen in a deportation proceeding has a due process right to a judicial determination of his citizenship before he is deported.[16] The Supreme Court in Ng Fung Ho held that such a person does, but indicated that it is deportation that works the liberty deprivation that triggers due process, not the claim to citizenship standing alone:

> Jurisdiction in the executive to order deportation exists only if the person arrested is an alien. The claim of citizenship is thus a denial

---

[14] Clark v. Martinez, 543 U.S. 371, 381-82 (2005) (citations omitted and emphasis added).

[15] See Haggar Co. v. Helvering, 308 U.S. 389, 393 (1940) ("A literal reading of [statutes] which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and with the legislative purpose." (emphasis added)). While the statutory scheme inconveniences Rios by forcing him to jump through extra hoops, that does not translate into an absurd result.

[16] 259 U.S. 276 (1922); see also Agosto v. I.N.S., 436 U.S. 748 (1978); Kessler v. Strecker, 307 U.S. 22 (1939).

of an essential jurisdictional fact. . . . To deport one who so claims to be a citizen obviously deprives him of liberty . . . . It may result also in loss of both property and life, or of all that makes life worth living. Against the danger of such deprivation without the sanction afforded by judicial proceedings, the Fifth Amendment affords protection in its guarantee of due process of law.[17]

We do not read either Strecker or Agosto as expanding White to include a due process right to judicial review of a stand alone claim to citizenship. In both Strecker and Agosto, the Government was attempting to deport the petitioner. In isolation, Agosto's description of White's holding as being that "a resident of this country has a right to de novo judicial determination of a claim to United States citizenship"[18] supports Rios's position. But this description is not faithful to Ng Fung Ho, which the Court had just quoted, and it conflicts with the Court's description of its case law that immediately precedes that comment: "Congress was aware of our past decisions holding that Constitution requires that there be some provision for de novo judicial determination of claims of American citizenship in deportation proceedings."[19]

Rios has not suffered a deprivation similar to deportation. Nor has he pointed to any other deprivations of "life, liberty, or property" before this court upon which to anchor his due process claim. The only basis upon which Rios asserts a due process right is that the Government has not recognized his citizenship; thus, to credit Rios's argument is to find that a due process right inheres naturally in a claim to citizenship itself, which in some circumstances allows the courts to consider – and ultimately recognize – a claim to citizenship outside of the procedures established by Congress.

---

[17] 259 U.S. at 284-85.

[18] 436 U.S. at 753.

[19] Id.

The argument is not without intuitive force; but we decline the invitation to find such a right now.   First, the case law does not clearly support such a right.  We have explained that "[t]hose persons not born in the United States may only acquire citizenship by birth as provided by Acts of Congress,"[20] although there appears to be disagreement within the Supreme Court on this point.[21]  Section 1503(a)(1), albeit procedural and not substantive, is part of the panoply of congressional acts that determines how those born outside the United States – as Rios was – acquire citizenship.  Second, we do not perceive Rios's plight as being as dire as he suggests – though it is admittedly less than ideal.  First, Rios might not prevail in the current removal proceedings; if he fails, he will be able to raise his citizenship claim through § 1252(b).  Second, Rios can attempt to reopen his second N-600 application and prove his citizenship that way; we express no view now on whether the reopened application would survive § 1503(a)(1)'s jurisdictional bar if pursued with appropriate attention to any removal proceedings.  Finally, by its plain terms and judicial interpretation, § 1503(a) does not limit the rights or privileges that trigger its applicability to N-600 applications alone; however, because the parties have neither briefed nor raised the issue, we express no view on how § 1503(a) fits within the full scheme of immigration statutes apart from the narrow facts of this case.  Rios does not

---

[20] Nguyen v. I.N.S., 208 F.3d 528, 532 (5th Cir. 2000).

[21] Compare Nguyen v. I.N.S., 533 U.S. 53, 71-73 (2001) (declining to address the issue of whether courts are able to confer "citizenship on terms other than those specified by Congress" or "assess the implications of statements in our earlier cases regarding the wide deference afforded Congress in the exercise of its immigration and naturalization power"), with id. at 73-74 (Scalia, J., concurring) (stating his view that courts have no power to confer "citizenship on a basis other than that prescribed by Congress" but concluding from the multiplicity of opinions in Miller v. Albright, 523 U.S. 420 (1998), and the instant case that a majority of justices think otherwise), with id. at 96-97 (O'Connor, J., dissenting) ("The instant case is not about the admission of aliens but instead concerns the logically prior question whether an individual is a citizen in the first place.  A predicate for application of the deference commanded by Fiallo [v. Bell, 730 U.S. 787 (1977),] is that the individuals concerned be aliens.  But whether that predicate obtains is the very matter at issue in this case.").

have an easy avenue by which he might bring his citizenship claim before the courts, but we do perceive avenues by which he might do so. Accordingly, we will not disturb the statutory scheme established by Congress.

AFFIRMED.