JAMES C. HO, Circuit Judge, concurring:
United States citizenship is one of the greatest privileges this world has ever known. So as with anything of great value, the privilege of citizenship must be vigorously protected against fraud and deceit.
Take this case. Juan Gerardo Sandoval Lopez brings this suit under 8 U.S.C. § 1503(a), seeking a judicial declaration that he is a U.S. citizen. But federal officials have previously determined-not once, but on three separate occasions, including two different removal proceedings in 1997 and 1998-that any suggestion that *448 Lopez is a U.S. citizen is based on a lie. They concluded that both Lopez and his father submitted false Texas birth certificates in a fraudulent effort to claim that Lopez is a U.S. citizen; that in fact, both men were born in Mexico, not Texas; that neither have otherwise obtained U.S. citizenship; and that both are subject to removal. Those proceedings were resolved over two decades ago. And Lopez never sought judicial review of his removal orders at that time (as he could have done under 8 U.S.C. § 1252 ).
Considering the history of these proceedings, the district court's summary dismissal of Lopez's second § 1503(a) suit is understandable. Swift action against citizenship fraud furthers the interests in both protecting the high privilege of citizenship and promoting the rule of law.
But in combating citizenship fraud, we must ourselves follow the rule of law. We must be scrupulous, not only in combating false claims of citizenship, but in preventing wrongful deprivations of citizenship as well. Cf. Ng Fung Ho v. White , 259 U.S. 276, 284, 42 S.Ct. 492, 66 L.Ed. 938 (1922) ("To deport one who so claims to be a citizen obviously deprives him of liberty.... It may result also in loss of both property and life, or of all that makes life worth living.").
It is in that spirit that I support reversal and remand for further proceedings here, due to the district court's erroneous res judicata analysis.
And it is in that same spirit that I write separately, to address what may occur on remand, in the event we send the case back for further proceedings without further comment: The district court may simply adhere to the jurisdictional analysis it employed in Lopez's first suit and dismiss this second suit for lack of jurisdiction on precisely the same grounds. As explained below, I believe the jurisdictional issues presented here require greater exploration than what has been provided by counsel in these proceedings to date.
To be sure, it may turn out that dismissal of this case is ultimately the correct result, whether on jurisdictional grounds or on the merits. But it is not just the result, but the reasoning, that matters-not just for this case, but for the cases to come.
I.
On remand, the district court should consider an issue apparently not presented by the parties in these proceedings to date: Does the jurisdictional bar of 8 U.S.C. § 1503(a) apply where, as here, the removal proceedings terminated nearly two decades ago? For purposes of 8 U.S.C. § 1503(a), is Lopez seeking review of a denial of citizenship that arose in a removal proceeding by the immigration court, or in the course of a passport application to the Department of State?
The exceptions clause of 8 U.S.C. § 1503(a) states: "[N]o such action may be instituted [under 8 U.S.C. § 1503(a) ] in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding." 8 U.S.C. § 1503(a). We have treated this exceptions clause as jurisdictional. See , e.g. , Rios-Valenzuela v. Dep't of Homeland Sec ., 506 F.3d 393, 398 (5th Cir. 2007) ("The exception [under § 1503(a) ] precludes jurisdiction" over a claim of citizenship where the claim "arose by reason of, or in connection with" a removal proceeding.).[1]
*449 The government is well within reason to argue, as an original matter, that the plain text of the jurisdictional bar of § 1503(a) is satisfied here: The issue of Lopez's status as a U.S. citizen did in fact "ar[i]se by reason of, or in connection with [a] removal proceeding"-indeed, in two separate removal proceedings, in 1997 and 1998. 8 U.S.C. § 1503(a).
But Lopez could have responded-and on remand, he might very well contend-that our court has previously rejected this argument (indeed, we have done so with the government's apparent blessing).
In Rios-Valenzuela , our court theorized that the jurisdictional bar of 8 U.S.C. § 1503(a) applies only to pending, not terminated, removal proceedings. To quote:
[W]e do not read the exception as forever hanging an albatross around the neck of those who first raise citizenship as a defense in a removal proceeding. So long as a citizenship claim finds its genesis outside of the context of removal proceedings, the exception is no bar to jurisdiction; thus, for example, once removal proceedings have run their full course and terminated, any future citizenship claim would not arise in those removal proceedings . The Government concedes this , explaining that "[i]f Rios-Valenzuela were to again apply for citizenship at some future time, when no removal proceedings have been initiated, and the claim is denied, ... he would have a right to seek declaratory judgment." This narrower reading is consistent with the concern that the federal courts not be used as tools to frustrate and interfere with removal proceedings.
506 F.3d at 399 (emphasis added). The Seventh Circuit, relying on Rios-Valenzuela , reached the same conclusion. See Ortega v. Holder , 592 F.3d 738, 742-43 (7th Cir. 2010) (same).
Perhaps the government, if pressed on remand to respond to such an argument, might offer a different reading of Rios-Valenzuela and Ortega . Or propose a theory for distinguishing those rulings. Or the government might simply disavow its own previous statements and assert that those opinions are incorrect.
For example, the government might argue that the opinions are inconsistent with the text of 8 U.S.C. § 1503(a). It could theorize that subclause (2) of the exceptions clause expressly concerns pending removal proceedings-thereby suggesting that subclause (1) must be read to cover terminated removal proceedings. See 8 U.S.C. § 1503(a) ("[N]o such action may be instituted [under 8 U.S.C. § 1503(a) ] in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding.").
And the government might argue that any language to the contrary in Rios-Valenzuela is strictly dicta, and not binding circuit precedent. In Rios-Valenzuela , this court invoked the jurisdictional bar of § 1503(a) in the context of a pending removal proceeding and dismissed suit for lack of jurisdiction accordingly. Accordingly, the government might argue that Rios-Valenzuela leaves the issue open in this circuit whether § 1503(a) applies where removal proceedings have already long since terminated, as they have here.
*450 * * *
These issues warrant careful consideration, particularly in light of the high stakes involved-not just for Lopez, but for others whose claims of citizenship are regarded as dubious by federal officials. We must safeguard the high privilege of citizenship for those lawfully entitled to claim it, while at the same time secure the privilege against fraudulent interlopers. These issues should be considered in the first instance on remand by counsel and the district court. For as we have repeatedly observed, we are a court of review, not first view. I concur.

The term "national of the United States" primarily means "a citizen of the United States." 8 U.S.C. § 1101(a)(22). Not relevant here, the term also includes "a person who, though not a citizen of the United States, owes permanent allegiance to the United States." Id. See generally 8 U.S.C. § 1408 (defining who shall be nationals but not citizens of the United States).