In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3642

ANGIE ORTEGA,

*Plaintiff-Appellant*,

*v.*

ERIC H. HOLDER, JR., Attorney
General of the United States,
et al.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:08-cv-01121—**Blanche M. Manning**, *Judge*.

ARGUED APRIL 15, 2009—DECIDED JANUARY 15, 2010

Before FLAUM, RIPPLE and SYKES, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Angie Ortega brought this action
for a declaration of nationality pursuant to 8 U.S.C.
§ 1503(a). The Government moved to dismiss the
complaint for lack of subject matter jurisdiction. The
district court granted the motion, and Ms. Ortega ap-
pealed. For the reasons set forth in the following opinion,

we reverse the judgment of the district court and remand for further proceedings.

## I

## BACKGROUND

The Government commenced removal proceedings against Ms. Ortega in September 2001; during the proceedings, Ms. Ortega claimed as a defense her status as a national of the United States. On April 12, 2002, while removal proceedings were pending, Ms. Ortega filed a Form N-600 Application for Certificate of Citizenship. The Chicago office of the former Immigration and Naturalization Service ("INS") denied the application twelve days later, without a hearing. Ms. Ortega appealed the denial of her application to the Office of Administrative Appeals ("AAO").

On May 7, 2002—the day after Ms. Ortega filed her administrative appeal with the AAO—the Immigration Judge ("IJ") terminated the removal proceedings with prejudice. The IJ determined that she had "established that she acquired U.S. Citizenship through her [United States citizen] father Alfredo Ortega pursuant to 301(g)" of the Immigration and Nationality Act. R.1, Ex. 2. The Government did not appeal the IJ's decision.

On February 28, 2003, the AAO denied Ms. Ortega's administrative appeal with respect to her application for a certificate of citizenship. On March 28, 2003, Ms. Ortega's counsel filed a motion to reconsider and to reopen with the AAO, which brought to the AAO's attention the evidence presented to, and ruling of, the IJ. The AAO,

however, returned Ms. Ortega's fee and motion on April 14, 2003, and directed her to submit her request to the local district office that made the original decision. Ms. Ortega re-filed her motion with the local district office on April 22, 2003; with this motion, she included a letter explaining that she originally had submitted her filing within the thirty-day window provided in 8 C.F.R. § 103.5, but mistakenly had sent it directly to the AAO.

Over four years later, on August 17, 2007, the AAO denied Ms. Ortega's motion as untimely. *See* R.14, Ex. C. In rejecting Ms. Ortega's motion, the AAO first noted the requirement, under 8 C.F.R. § 103.5, to file a motion within thirty days. It then observed that, "[b]y the applicant's counsel's own admission, the instant motion was sent erroneously to the AAO on March 28, 2003, and was not properly filed with the Chicago district office until April 23, 2003, almost two months after the issuance of the AAO's decision." R.79. The AAO determined that the motion Ms. Ortega had filed was not a motion to reopen; according to the AAO, the motion did not state new facts to be proved because the proceedings before the Immigration Court predated the AAO's decision in this matter. The AAO continued, stating:

> The instant motion is instead, at best, a motion to reconsider. A motion to reconsider must state the reasons for reconsideration and be supported by any pertinent precedent decisions to establish that the decision was based on an incorrect application of law or policy. A motion to reconsider a decision on an application or petition must, when

filed, also establish that the decision was incorrect based on the evidence of record at the time of the initial decision. Whereas 8 C.F.R. § 103.5(a)(1)(i) provides that a late motion *to reopen* may be excused in the discretion of CIS where it is demonstrated that the delay was reasonable and was beyond the control of the applicant or petitioner, the regulations do not provide any discretion to accept an untimely motion to reconsider. As the instant motion constitutes, at best, a motion to reconsider, the AAO cannot consider whether the delay in filing it was reasonable or beyond the applicant's control. The motion must therefore be rejected as untimely.

R.14, Ex. C at 2 (citations omitted).

Ms. Ortega then instituted this action in the United States District Court for the Northern District of Illinois on February 22, 2008. The complaint sought a declaration of nationality pursuant to 8 U.S.C. § 1503(a), which is set out in its entirety in the following discussion. The Government moved to dismiss the action on the ground that the court was without jurisdiction to grant relief under § 1503(a). *See* R.11 at 3. It argued that,

[s]ince the Plaintiff first asserted her claim to citizenship during her removal proceedings, her status as a national arose "by reason of, or in connection with" removal proceedings. Thus, under the plain language of the statute, th[e District] Court d[id] not have jurisdiction to consider Plaintiff's claim of citizenship in this case.

*Id.* at 3 (quoting 8 U.S.C. § 1503(a)).

The district court granted the Government's motion. Relying on the decision of the Court of Appeals for the Fifth Circuit in *Rios-Valenzuela v. Department of Homeland Security*, 506 F.3d 393 (5th Cir. 2008), the district court held that Ms. Ortega had raised her claim of citizenship in removal proceedings prior to the time that she filed her application for citizenship. Consequently, "the issue of plaintiff's citizenship 'arose by reason of, or in connection with' her removal proceeding." R.25 at 3 (quoting 8 U.S.C. § 1503(a)).

Ms. Ortega timely appealed.

## II

## DISCUSSION

Our disposition of Ms. Ortega's appeal depends upon the meaning of 8 U.S.C. § 1503(a). Therefore we start, as we must, with the language of the statute. *See Autry v. Nw. Premium Servs., Inc.*, 144 F.3d 1037, 1040 (7th Cir. 1998) (observing that the "starting point in any case involving the meaning of a statute[] is the language of the statute itself" (internal quotation marks and citations omitted)). Section 1503(a) of Title 8 states:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section

2201 of Title 28 against the head of such depart-
ment or independent agency for a judgment de-
claring him to be a national of the United States,
*except that no such action may be instituted in any case
if the issue of such person's status as a national of the
United States (1) arose by reason of, or in connection
with any removal proceeding under the provisions of
this chapter or any other act*, or (2) is in issue in any
such removal proceeding. An action under this
subsection may be instituted only within five
years after the final administrative denial of such
right or privilege and shall be filed in the district
court of the United States for the district in which
such person resides or claims a residence, and
jurisdiction over such officials in such cases is
conferred upon those courts.

8 U.S.C. § 1503(a) (emphasis added).

## A.

The Government maintains that the "plain meaning" of
§ 1503(a)(1) requires dismissal of Ms. Ortega's claim. It
first observes that it was "[o]nly upon initiation of
removal proceedings" that Ms. Ortega "assert[ed] citizen-
ship." Appellee's Br. 5. "Accordingly," the Government
concludes, "it is beyond question that Ortega's status
'arose by reason of, or in connection with [her] removal
proceeding.'" *Id.*

The Government also notes that its position finds
support in case law, specifically the Fifth Circuit's decision

in *Rios-Valenzuela*, 506 F.3d 393. In that case, Rios, like Ms. Ortega, had filed an application for citizenship while removal proceedings were still pending. As in Ms. Ortega's case, Rios's application was denied by the District Director. And in both cases, after removal proceedings were terminated, the AAO denied the petitioners' appeals of the denial of their applications. When Rios subsequently instituted an action under § 1503(a), the district court dismissed the complaint for lack of jurisdiction, and the Fifth Circuit affirmed. The Fifth Circuit concluded that the "text of the statute" supported the Government's position that the district court lacked jurisdiction. *Id.* at 398. It explained that

> "[t]he exception applies to claims of nationality raised in removal proceedings." It is the context of how the particular issue of citizenship arose rather than the mere timing of events that determines the applicability of § 1503(a)(1). The exception precludes jurisdiction over Rios's citizenship claim because his claim "arose by reason of, or in connection with" his removal proceeding: the issue of Rios's citizenship that forms the basis of his claim here originates, at the least, in connection with the removal proceedings.
>
> The N-600 application process is, as Rios argues, a proceeding separate from the removal proceedings. But § 1503(a)(1) does not apply depending on whether the proceedings are separate; rather, it applies when the particular citizenship issue "arose" in the removal proceeding. That

is, *the exception focuses on the proceeding in which the particular claim to citizenship originates*, not the proceeding in which it is being pursued.

*Id.* (footnote omitted; quoting *Said v. Eddy*, 87 F. Supp. 2d 937, 941 (D. Alaska 2000); emphasis added).

The Government does not believe that its interpretation of § 1503(a) forever bars an individual, who first raises a claim of citizenship in the context of removal, from obtaining a judicial declaration of citizenship. According to the Government, once the removal proceedings—during which the plaintiff raised a claim of citizenship—have terminated, any future action for a declaration of citizenship would not "arise" from those removal proceedings. Appellee's Br. 11. After the termination of those initial proceedings, therefore, the individual could re-file his application for a certificate of citizenship and, if denied, could institute an action under § 1503(a) without encountering a statutory bar to jurisdiction. Again, the Government turns to *Rios-Valenzuela* to support its position. In *Rios-Valenzuela*, the court rejected Rios's claim that the Government's "construction of the exception means that jurisdiction under § 1503(a) is always precluded when citizenship first arises in a removal proceeding"; it explained:

> [W]e do not read the exception as forever hanging an albatross around the neck of those who first raise citizenship as a defense in a removal proceeding. So long as a citizenship claim finds its genesis outside of the context of removal proceedings, the exception is no bar to jurisdiction;

thus, for example, once removal proceedings have run their full course and terminated, any future citizenship claim would not arise in those removal proceedings. The Government concedes this, explaining that "[i]f Rios-Valenzuela were to again apply for citizenship *at some future time*, when no removal proceedings have been initiated, and the claim is denied, then, according to *Said*, he would have a right to seek declaratory judgment." This narrower reading is consistent with the concern that the federal courts not be used as tools to frustrate and interfere with removal proceedings.

*Rios-Valenzuela*, 506 F.3d at 399.

## B.

### 1. Statutory structure and language

Our efforts to discern § 1503(a)(1)'s meaning must start, of course, with the words that Congress employed. We shall give the words of a statute their "ordinary meaning unless the context counsels otherwise." *United States v. Webber*, 536 F.3d 584, 593 (7th Cir. 2008) (citing *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991)). If the plain wording of the statute is clear, our work is at an end. *See id.* (citing *BedRoc, Ltd. v. United States*, 541 U.S. 176, 183 (2004) (noting that the task of statutory interpretation "ends there [if] the text is unambiguous")). However, in interpreting the wording of a statute, we must consider not only the words of the statute, but also the statute's structure:

"Context, not just literal text, will often lead a court to Congress' intent in respect to a particular statute." *Id.* (quoting *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 127 (2005) (Breyer, J., concurring)). Similarly, we must take into account the relationship of the statute to other provisions of the code. Congress does not legislate in a vacuum. We must assume that Congress is cognizant of other statutory provisions and expects its new enactments to work in harmony with existing provisions.

We begin with the opening sentence of § 1503(a), which states in relevant part: "If any person . . . claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, . . . upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 . . . declaring him to be a national of the United States." 8 U.S.C. § 1503(a). Thus, § 1503(a) first provides individuals, who have been denied a benefit of citizenship, with a means of challenging the adverse administrative action in court. Specifically, the individual may bring a declaratory judgment action under 28 U.S.C. § 2201.

The right to bring such an action, however, is not guaranteed to every individual who has been aggrieved by an agency action. The language of the statute continues: "except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such

removal proceeding." 8 U.S.C. § 1503(a). Taking the exceptions in reverse order, an individual may not institute a § 1503(a) action if nationality is "in issue," that is, being disputed, in an ongoing removal proceeding. Additionally, an individual may not institute a § 1503(a) action if "the issue of nationality," that is, the parties' dispute concerning nationality, arose by reason of or in connection with a removal proceeding.

Taken together, the exceptions set forth in subsections (a)(2) and (a)(1) are designed to protect removal proceedings from judicial interference and preserve 8 U.S.C. § 1252 as the exclusive means of challenging a final order of removal. A party may not frustrate the Government's effort to remove him by instituting an action under 8 U.S.C. § 1503(a) while proceedings are ongoing. Similarly, a party may not use § 1503(a) to frustrate Congress's effort to channel all appeals from removal proceedings—including those in which the alien raised claims of nationality—through 8 U.S.C. § 1252.

When we look to the detailed procedure that Congress instituted for review of removal proceedings, it is even more clear that the jurisdictional exception in § 1503(a) was directed only at those individuals whose claims of nationality were being or had been litigated fully in removal proceedings. First, Congress channeled all appeals from final orders of removal to the courts of appeals by way of 8 U.S.C. § 1252(a)(5). Second, Congress established a specific procedure for reviewing claims of nationality raised in the context of removal proceedings. Section 1252(b)(5)(B) of Title 8 provides:

> If the petitioner claims to be a national of the
> United States and the court of appeals finds that a
> genuine issue of material fact about the petitioner's
> nationality is presented, the court shall transfer
> the proceeding to the district court of the United
> States for the judicial district in which the peti-
> tioner resides for a new hearing on the nationality
> claim and a decision on that claim *as if an action
> had been brought in the district court under 2201 of
> Title 28*.

*Id.* (emphasis added). Thus, an individual whose claim
of nationality is rejected in the context of removal pro-
ceedings, and whose claim also involves a genuine and
material factual dispute, is provided the same mechanism
for redress set forth in 8 U.S.C. § 1503(a)—a declaratory
judgment action.

In sum, the language of § 1503(a)(1), read within the
context of § 1503(a) and also read in conjunction with
related provisions of Title 8, makes it clear that Congress
intended individuals to pursue one of two routes to
establish claims for nationality. Generally, a person may
file an administrative application for a certificate of
citizenship, which, if denied, could be pursued by way
of an action under 8 U.S.C. § 1503(a). However, if the
question of nationality first arises in the context of a
removal proceeding, the person must pursue his claims
through those proceedings, culminating either with a
declaration or denial of nationality.

### 2. The Operation of the Statutory Scheme

In enacting § 1503(a), Congress focused on the need to protect the smooth operation of removal proceedings. It also provided, however, that any individual whose claim of citizenship was not recognized in administrative proceedings eventually could seek an adjudication from the district court on that claim. However, this statutory scheme, while satisfying Congress's primary focus of protecting removal proceedings, did not anticipate the possibility that an individual in removal proceedings, whose claim of citizenship was *accepted* by the IJ, would not be able to obtain complete relief through the removal route. If an IJ were to credit an individual's defense of citizenship and, therefore, were to lift the threat of removal, the individual would not obtain a final order of removal—a prerequisite for pursuing review under 8 U.S.C. § 1252 and, consequently, for obtaining a judicial declaration of that citizenship. There certainly is nothing in the language of the statute or in the legislative history of § 1503(a) that would justify the conclusion that Congress meant to leave an individual, with more than a colorable claim of nationality, in legal limbo—able to remain in this Country, but without any means of establishing her nationality. Congress's solicitude in providing all others with a means of obtaining a certificate of citizenship either through the general application process or through the removal process evinces Congress's concern that individuals be able to settle, definitively, the issue of citizenship. Indeed, it would be disrespectful to impute to Congress a desire to leave someone in Ms. Ortega's situation permanently out in the cold.

Because Congress gave no explicit statutory direction and because there is nothing in the statute to lead us to conclude that Congress desired individuals like Ms. Ortega to be without any remedy, we believe that the appropriate course—and one suggested by both the Government and the Fifth Circuit—is simply to have her begin the process of establishing her nationality anew. At oral argument, the Government assured us that there was no impediment to Ms. Ortega's filing a new application for citizenship. It explicitly repeated that assertion in its supplemental submission.

The Government's representation is not totally accurate. The regulations do not prohibit a second application for citizenship; however, as we read them, they do limit the circumstances under which a second application will be considered. With respect to denial of an application for a certificate of citizenship, the regulations provide:

> If it is the decision of the district director to deny the application for a Certificate of Citizenship, the applicant shall be furnished the reasons for denial and advised of the right to appeal in accordance with the provisions of 8 CFR 103.3(a). After an application for a Certificate of Citizenship has been denied and the appeal time has run, *a second application submitted by the same individual shall be rejected and the applicant instructed to submit a motion for reopening or reconsideration in accordance with 8 CFR 103.5.* The motion shall be accompanied by the rejected application and the fee specified in 8 CFR 103.7 reduced by the amount

of the fee paid with the rejected application. A decision shall be issued with notification of appeal rights in all Certificate of Citizenship cases, including any case denied due to the applicant's failure to prosecute the application.

8 C.F.R. § 341.6 (emphasis added). For its part, 8 C.F.R. § 103.5 provides that motions to reconsider must "establish that the decision was based on an incorrect application of law or Service policy," 8 C.F.R. § 103.5(a)(3), and must be made within thirty days of the decision that the motion seeks to reconsider, *id.* § 103.5(a)(1)(i). Motions to reopen must state "new facts to be provided in the reopened proceedings," *id.* § 103.5(a)(2), and must be made within thirty days, *id.* § 103.5(a)(1)(i); however, the immigration authorities may excuse, in their discretion, an untimely motion to reopen "where it is demonstrated that the delay was reasonable and was beyond the control of the applicant or petitioner," *id.*

We believe that an individual, such as Ms. Ortega, who is armed with an order of an IJ terminating removal proceedings in her favor, certainly will make at least a prima facie showing that both her change of status (as non-removable) and the termination of removal proceedings constitute new facts for purposes of a motion to reopen. *Cf. Johnson v. United States*, 544 U.S. 295, 302 (2005) (holding that the vacatur of an underlying state-court judgment is a fact, the discovery of which triggers the running of the

statute of limitations under 28 U.S.C. § 2255).[1] Although such an individual still must rely on the agency's discretion to reopen such proceedings, we have to believe that the agency will exercise this discretion judiciously and with an eye to accomplishing Congress's purpose in enacting § 1503(a) and § 1252(b). *See FCC v. Schreiber*, 381 U.S. 279, 296 (1965) (noting "the presumption to which administrative agencies are entitled—that they will act properly and according to law"); *Rhoa-Zamora v. INS*, 971 F.2d 26, 34 (7th Cir. 1992) (observing that "agency action is entitled to a presumption of regularity" (internal quotation marks and citations omitted)).

### 3.  Application to Ms. Ortega

The citizenship claim that Ms. Ortega pursued in her original application for a certificate of citizenship

---

[1] Given this authority, the AAO's determination that Ms. Ortega's motion is "at best" a motion to reconsider is problematic. R.14, Ex. C at 2. According to the Government's own submission, whether an individual is in removal proceedings at the time she files a N-600 application is a jurisdictional fact for purposes of 8 U.S.C. § 1503, that is, the termination of proceedings is a fact bearing on the applicant's eligibility for ultimate relief in the district court. It follows, therefore, that the applicant's effort to bring this fact to the agency's attention should be characterized as a motion to reopen—the mechanism by which an individual brings new facts before the agency—as opposed to a motion to reconsider, which is focused on errors of law.

arose as a result of or in connection with her removal proceedings. Thus, § 1503(a)(1) prevents her from challenging the administrative denial of that application by way of a declaratory judgment action. Instead, Ms. Ortega was required to re-file her application as a motion to reopen or a motion to reconsider;[2] this action, in essence, would have separated her administrative action from her prior removal proceedings and eliminated the jurisdictional bar to any court action created by way of § 1503(a)(1).

On further review of Ms. Ortega's administrative file, however, we have ascertained that Ms. Ortega in fact has accomplished this necessary step. As we have discussed in some detail, 8 C.F.R. § 341.6 requires that any subsequent application for citizenship be filed as a motion to reconsider or to reopen. In this case, Ms. Ortega did file a motion to reconsider or to reopen after the AAO denied her appeal and *after her removal proceedings had been terminated*. Indeed, her motion for reopening or reconsideration explicitly alerted the AAO to the fact that removal proceedings had been terminated in her favor. The filing of this motion, by the Government's concession and consistent with the Fifth Circuit's decision in *Rios-Valenzuela*, removed the "albatross" of the prior

---

[2] *See* 8 C.F.R. § 341.6 ("After an application for a Certificate of Citizenship has been denied and the appeal time has run, a second application submitted by the same individual shall be rejected and the applicant instructed to submit a motion for reopening or reconsideration in accordance with 8 CFR 103.5.").

removal proceedings from Ms. Ortega's neck and took her outside of the exception set forth in § 1503(a)(1).

Because Ms. Ortega's motion to reopen or reconsider is, by the Government's own regulation, the correct substitute for a second application for a certificate of citizenship, Ms. Ortega's motion satisfied the Government's requirement that she reinstitute an administrative action after the termination of removal proceedings. Having done so, and having been denied administrative relief, there is no longer a jurisdictional impediment to her instituting a declaratory judgment action under § 1503(a) because the action that she is challenging is not tainted by its connection to removal proceedings.

### Conclusion

For the foregoing reasons, the judgment of the district court dismissing Ms. Ortega's complaint for lack of subject matter jurisdiction is reversed, and the case is remanded for further proceedings.

REVERSED AND REMANDED