Mohammad ANEES,
Petitioner/Plaintiff

v.

Janet NAPOLITANO, Secretary, U.S. Department of Homeland Security; Eric H. Holder, Jr., U.S. Attorney General; Hillary Clinton, Secretary, Department of State; and U.S. Citizenship and Immigration Services, Respondents/Defendants.

C.A. No. 12–cv–30183–MAP.

United States District Court,
D. Massachusetts.

Sept. 24, 2013.

Anthony Drago, Jr., Boston, MA, for Petitioner/Plaintiff.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, Ashley Y. Martin, United States Department of Justice Civil Division, Office of Immigration Litigation, Washington, DC, for Respondents/Defendants.

## MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION

PONSOR, District Judge.

## I. INTRODUCTION

Plaintiff Mohammad Anees is a native of Pakistan currently residing in Westfield, Massachusetts. He has brought this action seeking a declaration of his U.S. citizenship, pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1503(a). Defendants, Janet Napolitano, Secretary of the Department of Homeland Security, Eric Holder Jr., U.S. Attorney General, Hillary Clinton, Secretary of the Department of State, and U.S. Citizenship and Immigration Services ("USCIS"), filed a motion to dismiss for lack of jurisdiction. (Dkt. No. 15.) Because the plain language of 8 U.S.C. § 1503(a)(2) is a clear limitation on jurisdiction here, the court will grant Defendants' motion.

## II. FACTS [1]

In 1981, Plaintiff was born in Pakistan. Three years later, Plaintiff's mother, Bilqis Fatima, divorced Plaintiff's father under Pakistani and Islamic Sharia law. At some point in the early 1990s, Fatima obtained lawful permanent residence status and entered the United States. In 1994, Fatima and Plaintiff's father once again obtained a valid, legal divorce under Pakistani law from the Lahore Cantonment board. Fatima became a naturalized United States citizen in May 1996, and on June 2, 1998, Plaintiff, before turning eighteen, was admitted to the United States as a lawful permanent resident.

In December 2001, Plaintiff was convicted in a Connecticut court of two aggravated felonies, rendering him deportable. When removal proceedings commenced against him in April 2002, Plaintiff moved to terminate them, arguing that his convictions did not constitute aggravated felonies or crimes involving moral turpitude justifying deportation. On May 31, 2002, the court denied Plaintiff's motion and on June 14, 2002 ordered his removal.

Plaintiff appealed the May 31, 2002, decision to the Board of Immigration Appeals ("BIA"), which rejected his arguments. In 2004, he petitioned the Second Circuit Court of Appeals for direct review of the BIA decision.

Late in 2002, while the BIA appeal was pending, Plaintiff filed a writ of habeas corpus in the U.S. District Court for the District of Connecticut. Simultaneously, he submitted an N–600 application with the Immigration and Naturalization Service ("INS") seeking a certificate of citizenship and applied for a passport from the U.S. Department of State. In both applications, and in court, he argued that former INS Act § 321, 8 U.S.C. § 1432, provided for his derivative United States

---

1. For purposes of Defendants' motion to dismiss, the court accepts as true the well-pleaded factual allegations contained in the complaint, drawing reasonable inferences in Plaintiff's favor. *Gargano v. Liberty Intern. Underwriters, Inc.*, 572 F.3d 45, 48 (1st Cir. 2009).

citizenship.[2] The INS denied Plaintiff's N–600 application, and that decision was affirmed by the CIS Administrative Appeals Office ("AAO") in March 2004. Despite the INS denial, the State Department issued Plaintiff a United States passport on June 24, 2005. After Plaintiff obtained his passport, the question of his citizenship appeared to have been resolved, and thus his cases before the U.S. District Court in Connecticut and the Second Circuit were closed without final adjudication of the issues.

On October 8, 2009, officers from U.S. Immigration and Customs Enforcement ("ICE") arrested Plaintiff at his home in Westfield, Massachusetts, seized his U.S. passport, and placed him in custody. Although Plaintiff was eventually released, ICE did not return his passport. In May 2010, he filed a "Statement Regarding a Lost or Stolen Passport" with the U.S. Department of State, which, in turn, revoked his previous passport and denied his application.

While at his home on August 12, 2010, Plaintiff was again taken into custody by ICE. At that time Plaintiff filed a complaint in this federal court, seeking declaratory relief, preliminary injunctive relief, and a writ for habeas corpus. The case was drawn to U.S. District Court Judge Rya W. Zobel. As part of the resolution of this complaint, Plaintiff was released from custody, and the USCIS reopened his N–600 application to take additional evidence.

While the renewed N–600 application process was unfolding, Plaintiff attempted to reopen his previously closed removal proceedings with the U.S. Immigration Court in Hartford, Connecticut. His mo-

tion to reopen was granted on February 17, 2011, and the case was transferred to Boston. Plaintiff requested that the court rescind the order of removal. The Boston Immigration Court delayed the case to await USCIS's decision in connection with his N–600 application. That immigration court proceeding is still pending.

On March 1, 2012, USCIS denied Plaintiff's N–600 application. That decision was affirmed by the AAO on September 21, 2012. As a result, Plaintiff filed this action challenging the AAO's decision and requesting that the court declare him a U.S. citizen. In response, Defendants filed the motion to dismiss now before the court.

### III. *DISCUSSION*

■ A federal court is obliged to grant a motion to dismiss under Fed.R.Civ.P. 12(b)(1) where it lacks subject matter jurisdiction to hear the dispute. The party invoking jurisdiction carries the burden of proof. *Murphy v. U.S.,* 45 F.3d 520, 522 (1st Cir.1995), cert. denied, 515 U.S. 1144, 115 S.Ct. 2581, 132 L.Ed.2d 831 (1995) (citation omitted).

A putative United States citizen can assert citizenship affirmatively or defensively. The two approaches follow different procedural paths.

To apply for citizenship affirmatively, the applicant must seek a certificate of citizenship by submitting Form N600 with USCIS. 8 U.S.C. § 1452(a); 8 C.F.R. § 341.1. If that application is denied, the petitioner can appeal the decision to the AAO. 8 C.F.R. §§ 341.6 & 103.3(a). Should the AAO deny the appeal, the petitioner will be deemed to have exhausted

**2.** Former INS Act § 321, 8 U.S.C. § 1432, provided for derivative citizenship when the applicant was in the custody of a naturalized U.S. citizen and was lawfully admitted to the U.S. for permanent residence prior to his eighteenth birthday. That Act was repealed by the Immigration and Nationality Act, Pub.L. No. 106–395, § 103(a), 114 Stat. 1632 (2000).

his administrative remedies and may file an action for a declaratory judgment in U.S. District Court. 8 U.S.C. § 1503(a).

The issue of citizenship can also be raised defensively in a removal proceeding in immigration court. If the defense does not succeed, and the court orders removal, the petitioner can appeal the decision to the BIA. 8 C.F.R. § 1003.1(b). If the BIA denies a petitioner's claim, he may bring a petition for review with the appropriate federal court of appeals. 8 U.S.C. § 1252(a)(5). The court of appeals can issue a decision on the citizenship claim or can transfer the case to a district court if there is a genuine issue of material fact as to the individual's nationality. 8 U.S.C. § 1252(b)(5).

If a petitioner succeeds utilizing the defensive mechanism, he must still undertake the affirmative step of seeking a certificate of citizenship from USCIS. However, "[a]fter an application for a certificate of citizenship has been denied and the time for appeal has expired, USCIS will reject a subsequent application submitted by the same individual and the applicant will be instructed to submit a motion to reopen or reconsider in accordance with 8 C.F.R. 103.5." 8 C.F.R. § 341.5(e). Although a motion to reopen or reconsider must usually be filed within thirty days, "immigration authorities may excuse, in their discretion, an untimely motion to reopen 'where it is demonstrated that the delay was reasonable and was beyond the control of the applicant or petitioner.'" Ortega v. Holder, 592 F.3d 738, 746 (7th Cir.2010) (citing 8 C.F.R. § 103.5(a)(1)(I)).

In this case, Plaintiff is pursuing citizenship affirmatively by invoking 8 U.S.C. § 1503(a) as the basis for jurisdiction. Defendants argue that two restrictions in that statute bar the court from hearing this case.

## A. *8 U.S.C. § 1503(a).*

In general, a petitioner appealing an adverse decision of the AAO may bring an action in a federal district court against the head of the department or independent agency that is alleged to have denied him a right. 8 U.S.C. § 1503(a). This statute, however, contains two critical limitations on this jurisdiction. Jurisdiction does not lie where the "issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter, or any other act, or (2) is in issue in any such removal proceeding." § 1503(a)(1) & (2). These limitations on jurisdiction serve to "protect removal proceedings from judicial interference." *Ortega*, 592 F.3d at 744. Enforcement of these limitations ensures that a party exhausts administrative remedies before bringing a judicial action.

Defendants argue that both restrictions apply and each independently bars Plaintiff's case. As such, they will be taken up in turn.

### 1. *8 U.S.C. § 1503(a)(1).*

▆ The first limitation on jurisdiction exists where the applicant's status as a national "arose by reason of, or in connection with a removal proceeding." 8 U.S.C. § 1503(a)(1). "It is the context of how the particular issue of citizenship arose rather than the mere timing of events that determines the applicability of § 1503(a)(1)." *Rios–Valenzuela v. Dep't of Homeland Sec.*, 506 F.3d 393, 398 (5th Cir.2007).

▆ Defendants argue that the sole purpose of Plaintiff's 2002 habeas petition was to counter the contemporaneous removal initiative. Because this litigation is at least tangentially tied to that original habeas petition, Defendants say, the claim here is "connected with" the initial removal

hearing. In Defendants' view, the "exception focuses on the proceeding in which the particular claim to citizenship originates, not the proceeding in which it is being pursued." *Rios–Valenzuela,* 506 F.3d at 398.

This argument is unpersuasive. Even if the 2002 habeas petition was somehow "connected with" the 2002 removal proceeding, Defendants fail to offer a convincing explanation for why this pending matter should be viewed as "connected with" that litigation.

Courts have been skeptical of Defendants' "connected with" argument. In *Henry v. Quarantillo,* a plaintiff submitted a second N–600 form approximately twenty months after his initial removal proceeding had ended. 684 F.Supp.2d 298 (E.D.N.Y.2010). He based his second petition on "new evidence" establishing his citizenship. *Id.* at 305. That court, like this one, faced the task of balancing the broad "in connection with" statutory language with the absurd result of forever restricting an additional application for citizenship once an initial removal proceeding terminated. *Id.* at 304. The court ultimately distinguished the initial removal proceeding from the subsequent N–600 application to conclude that the latter was not "in connection with" the former. *Id.* at 303–04. Failing to make this distinction, the court said, would go "too far in restricting removed persons from ever having a further opportunity to present their claims to eligibility for ... United States citizenship." *Id.* at 303 (citation omitted).

The *Henry* court offers the best approach to deal with the present case. Four years passed between the end of the previous litigation (*i.e.,* the Second Circuit case and the habeas petition) and ICE's first arrest of Plaintiff. Because ICE continued to place Plaintiff in custody, he was forced to file a new habeas petition with this court. Only as a result of that second habeas petition did USCIS reopen Plaintiff's N–600 application to take more evidence. Given that the sole purpose of reopening the N–600 process was to allow Plaintiff to present new evidence, and the process stemmed solely from ICE's actions, this court must conclude, as the *Henry* court did, that the new application is not barred by the "in connection with" language.

Further, a significant distinction may be drawn between the 2002 habeas petition filed in Connecticut, which may have been connected with the 2002 removal proceedings, and the habeas petition filed in this court in 2010. The latter "finds its genesis outside of the context of removal proceedings." *Rios–Valenzuela,* 506 F.3d at 399. Pretending otherwise would forever preclude Plaintiff from contesting his citizenship in this court, regardless of how remote and attenuated the past removal hearing was. The more appropriate conclusion is that this proceeding is not "connected with" Plaintiff's initial claim of citizenship.

Unfortunately for Plaintiff, while he can clear the § 1503(a)(1) hurdle, the second limitation is far harder, indeed impossible, to get over.

### 2. *8 U.S.C. § 1503(a)(2).*

The second jurisdictional limitation applies where citizenship "is in issue" in a removal proceeding. § 1503(a)(2). This restriction prevents judicial interference with an on-going proceeding in an immigration court, and serves to preserve § 1252 as the exclusive route to appeal an unfavorable removal decision. *See Phuc Huu Nguyen v. USCIS,* No. 1:CV–09–2211, 2010 WL 3521910, *3–5 (M.D.Pa. Aug. 31, 2010).

The few courts that have dealt with this section have given its language a natu-

ral and plain meaning: where a removal proceeding is pending, and citizenship is at issue, the district court cannot hear the matter. *See e.g., Wilks v. Farquharson,* 450 Fed.Appx. 1, 2–3 (2d Cir.2011); *Seal v. Holder,* No. C12–181–TSZ–BAT, 2012 WL 2881256, \*2 (W.D.Wash. May 31, 2012); *Patino v. Chertoff,* 595 F.Supp.2d 310, 313–14 (S.D.N.Y.2009); *Hutchinson v. Mukasey,* No. 07CV–10716, 2007 WL 4323006, \*2–3 (S.D.N.Y. Dec. 10, 2007). It is difficult to formulate any other possible meaning for the statutory language; no court appears to have done so.

■ The main dispute here is whether the Plaintiff's citizenship is actually *at issue* in the pending immigration proceedings. Defendants focus on Plaintiff's motion to reopen the removal proceedings to demonstrate that the question of his citizenship is directly at issue. (Dkt. No. 15, Ex. 3.) Specifically, Plaintiff's motion to reopen requested that the immigration court "rescind his order of removal and . . . resolve the issue of whether he is a United States Citizen." *Id.* Throughout the motion, Plaintiff asserts his claim for citizenship and the need for the immigration court to rule on it. *Id.*

Plaintiff suggests that despite the language of his motion to reopen, his only purpose in filing the motion was to stop ICE from continually placing him in custody. The removal proceedings would give USCIS the time to rule on the N–600 petition, while curtailing ICE's ability to arrest Plaintiff.

■ Although Plaintiff's argument attracts sympathy—he can hardly be faulted for attempting to avoid being arrested and detained regularly—any removal proceeding necessarily puts the question of citizenship at issue. As the Second Circuit has

discussed, "The Executive Branch may remove certain aliens but has no authority to remove citizens. An assertion of United States 'citizenship is thus a denial of an essential jurisdiction fact' in a deportation proceeding." *Poole v. Mukasey,* 522 F.3d 259, 264 (2d Cir.2008) (citations omitted). No way exists to escape the fact that Plaintiff's ongoing immigration proceedings placed his citizenship at issue, and thereby subjected him to the second jurisdictional limitation here. At this time, 8 U.S.C. § 1503(a)(2) bars Plaintiff from invoking 8 U.S.C. § 1503 as a basis for jurisdiction.

## B. *Declaratory Judgment Act, 28 U.S.C. § 2201, and All Writs Act, 28 U.S.C. § 1651.*

■ Plaintiff briefly mentions that the court should turn to the Declaratory Judgment Act and the All Writs Act to find a remedy for Plaintiff's claim. (Dkt. No. 18, p. 10–11.) However, as Plaintiff concedes, neither serves as an independent source of federal court jurisdiction. *See U.S. v. Denedo,* 556 U.S. 904, 911, 129 S.Ct. 2213, 173 L.Ed.2d 1235 (2009) ("As the text of the All Writs Act recognizes, a court's power to issue any form of relief—extraordinary or otherwise—is contingent on that court's subject-matter jurisdiction over the case or controversy."); *Colonial Penn Grp., Inc. v. Colonial Deposit Co.,* 834 F.2d 229, 232–33 (1st Cir.1987)("Federal jurisdiction does not lie simply because relief is requested under the federal Declaratory Judgment Act.") Thus, neither statute offers a reliable basis for jurisdiction in this matter.

## IV. *CONCLUSION*[3]

For the foregoing reasons, Defendants' Motion to Dismiss (Dkt. No. 15) is hereby

---

**3.** This ruling will, regrettably, mean further delay in the resolution of Plaintiff's status.

Fortunately, an avenue for judicial relief still remains open. If Plaintiff is unsuccessful in

ALLOWED. The clerk will enter judgment of dismissal. This case may now be closed.

It is So Ordered.

his pending matter before the immigration court, 8 U.S.C. § 1252 provides a direct route to judicial review. If he succeeds in immigration court, he can petition the U.S. Citizenship and Immigration Services ("USCIS") to reopen his N–600 application. While the USCIS will have some discretion in its review, the Seventh Circuit has pointedly observed that "an individual ... who is armed with an order of an IJ [immigration judge] terminating removal proceedings in her favor, certainly will make at least a prima facie showing that both her change of status (as non-removable) and the termination of removal proceedings constitute new facts for purposes of a motion to reopen." *Ortega v. Holder*, 592 F.3d 738, 745 (7th Cir.2010). The court assumes the USCIS will respect this sentiment.